Paul E. Perschke, Plaintiff, v. Westinghouse Electric Corporation, et al., Defendants.

Gust K. Newberg Construction Company, Third-Party Plaintiff-Appellant, v. American Bridge Division, United States Steel Corporation, Third-Party Defendant-Appellee.

Gen. No. 53,248.

First District.

June 6, 1969.

Menk, Johnson, Ryan & Bishop, of Chicago (John Cadwalader Menk, of counsel), for appellants.

Harlan L. Hackbert, of Chicago (Hackbert, Rooks, Pitts, Fullagar and Poust, of counsel), for appellee.

ALLOY, J.

The cause before us originated as an action under the Structural Work Act (1967 Ill Rev Stats, c 48, §§ 60–69) which was instituted as against Westinghouse Electric Corporation (hereinafter called "Westinghouse") and Gust K. Newberg Construction Company (hereinafter called "Newberg"). Westinghouse was the elevator subcontractor and Newberg was the general contractor in the construction of the Chicago Civic Center. In the same action, Newberg and Westinghouse filed third-party complaints against United States Steel Corporation, American Bridge Division (hereinafter called "Steel"). The action was instituted by Paul E. Perschke, an employee of Steel. Newberg filed a counterclaim as against Westinghouse seeking indemnity on an "active-passive" negligence theory with an express indemnity under provisions of the Westinghouse subcontract. Newberg also filed an amended third-party complaint as against Steel. At the close of the evidence of each defendant and the third-party plaintiff, Steel moved for directed verdicts and judgments in its favor and those motions were granted and judgments were entered in favor of Steel and as against Newberg and Westinghouse. The evidence in the case disclosed that certain planks had been placed by Westinghouse and these were construed as "scaffolds" within the act, and that both Newberg and Westinghouse were found to have been in "charge of" such work. The jury returned a verdict of $812,000 as against Newberg and Westinghouse and judgment was entered upon such verdict.

The record discloses that a site was acquired for a new courthouse in Chicago by the Chicago Building Commission. Prior to awarding the general contract for construction of the new court building, the Commission

entered into a contract on April 25, 1963, with the American Bridge Division of United States Steel Corporation to furnish and erect the structural steel for the building. This contract was described as "Contract No. 3." It contained the following provisions which are pertinent to the issues involved in the case before us:

> "This contract may be assigned by the Commission to the Commission's general contractor when and as selected. This contract may not be assigned by the contractor."
>
> . . . . . .
>
> "The undersigned the contractor awarded the contract No. 3 by the Public Building Commission of Chicago hereby consents to such assignment thereof as said commission may at anytime hereafter make. This consent is and shall be irrevocable."
>
> . . . . . .
>
> "The contractor shall indemnify and save harmless the commission, its commissioners, its respective officers, agents and employees including the commission's architects, engineers, individually and collectively from all claims, demands, actions and the like of every nature and description made or alleged to arise out of the work under this contract. In the event of any injury (including death), loss or damage (or claim or claims thereof), the contract shall give immediate notice to the owner and architect."

After this contract had been entered into between the Commission and Steel, the Commission awarded the general contract for construction of the court building to Gust K. Newberg Construction Company, and the Commission assigned its Contract No. 3 with Steel to Newberg. The assignment expressly provided as follows:

> "The Public Building Commission of Chicago hereby assigns to Gust K. Newberg Construction Company

the general contractor for the Civic Center the above and foregoing Contract No. 3. This assignment shall be effective as of the date of the acceptance hereof."

Newberg accepted the assignment. It is noted that Steel had consented to the assignment irrevocably prior to such time.

Paul Perschke, plaintiff, an ironworker, who was employed by Steel, fell and was seriously injured on June 18, 1964. He received Workmen's Compensation from Steel. Perschke thereafter sued Newberg and Westinghouse Electric, as indicated herein, and Newberg filed a third-party complaint against Steel seeking indemnity from Steel under the provisions of written Contract No. 3 between Steel and the Public Building Commission, which contract had been assigned to Newberg.

The award of $812,000 referred to was appealed from, but, so far as the record is concerned, the appeal was discontinued by the appellants. The only issue before us involves the third-party complaint filed as against Steel by Newberg. At the hearing of this cause, the court considered the indemnity claim of Newberg as against Steel and indicated a belief that the written construction Contract No. 3 established a valid claim in favor of Newberg as against Steel for indemnity. The trial court, however, also found that Newberg had released his right to indemnity under the provisions of a written release between Newberg and Steel dated May 10, 1967. This release recited the circumstances surrounding the assignment to Newberg of Steel's contract and recited that Steel owed Newberg $150,000 for work Newberg did for Steel. The release also recited that the amount due Steel was reduced by $125,000 "because of two accidents which occurred during the erection of Structural Steel and Architectural Exposed Steel—the first on January 23, 1964, the second on February 12, 1964." Neither of the accidents referred to were the Perschke accident, and both of

the accidents involved damage caused to the building by acts of Steel without any resulting personal injuries. The release then specifically recited:

"IT IS FURTHER UNDERSTOOD AND AGREED that in consideration of the release of NEWBERG by AMERICAN BRIDGE of any liability or claim against NEWBERG arising out of the Chicago Civic Center Project, NEWBERG does hereby release AMERICAN BRIDGE from any and all claims or demands of any kind or character whatsoever that NEWBERG may have against AMERICAN BRIDGE which arise out of Civic Center Contract No. 3 and Civic Center Contract No. 4 and will indemnify and save harmless AMERICAN BRIDGE from any and all claims and demands of any kind or character including, but not limited to, penalties, delays, direct, indirect and consequential damages which have been made, may be made, or may be pending against AMERICAN BRIDGE by NEWBERG'S agents, servants, employees, representatives, subcontractors, materialmen and the Public Building Commission of Chicago, Illinois, its Architects and any and all insurance companies, bonding companies and sureties which may arise out of the Chicago Civic Center Project."

The trial court thereupon refused to allow the claim of Newberg under the third-party complaint and, also, refused to permit any testimony with respect to any negotiations or discussions preceding the execution of the written release.

The principal issue before us is whether the release referred to is a bar to the asserted right of indemnity by Newberg as against Steel. In connection with the determination of such issues, it is also necessary to determine whether extrinsic evidence should have been admissible to vary or limit the terms of such release. A further

27

issue remains as to whether the trial court correctly determined that Newberg was entitled to indemnity under the terms of Contract No. 3, in absence of the written release of such obligation.

As a preliminary matter, appellee Steel asserts that the report of proceedings in this appeal which was presented for filing and approval and was not filed and approved within the provisions of Supreme Court Rule 323(b) and (e) with respect to notice of and time for filing and approval of such report of proceedings. The chief point for consideration here involved an order which the trial court entered on May 24, 1968, extending the time for approval in filing the report of proceedings. A motion for extension was filed by Newberg and notice was given to all parties except Steel. This was apparently an oversight by Newberg. Steel contends that the omission makes the entire appeal invalid. This Court has already determined that the motion to dismiss by reason of such matters relating to filing and approval of the report of proceedings should be denied, on the ground that the failure to give such notice was an oversight, and, also, that there was no prejudice resulting therefrom. Under the circumstances we see no reason to change the conclusion heretofore announced by this Court, and such motion to dismiss the appeal, now again made by appellee, is herewith denied.

The fundamental issue here is whether the trial court correctly construed the release of May 10, 1967, in concluding that any rights which Newberg had to indemnity from Steel were extinguished or terminated by such release. It is contended on appeal by Newberg that the general language of the release was by the terms of the release limited to certain specific items which appear in the wording of the release. Newberg contends that the release covered only questions of cross-claims for charges and materials and two designated claims for damages to the building by Steel during construction. In connection

28

with this argument, Newberg refers to the contract to show that $1,073,982.25 was owed to Steel and from this was deducted $150,000 for back charges (covering work that Newberg did for Steel) and also $125,000 for two instances of damage to the building by Steel. Subtracting this total of $275,000 from the $1,073,982.25 resulted in a figure of $798,982.85 which was the net consideration recited in the agreement. Newberg, therefore, argues that these items of back charges and the two specific accidents were the only matters covered by the release.

On appeal in this Court, Newberg emphasizes the language of Todd v. Mitchell, 168 Ill 199, 204, 48 NE 35:

"The general words of release will be restrained in effect by the recitals contained in the instrument, as applied to the subject matter, . . . and this is true at law as well as in equity, . . . ."

We note, however, that the release in the case before us does not come within the rule quoted from in the Todd case. In the release of May 10, 1967, there is clear wording and intention by the parties that the release is to be a general release of all claims and rights between Steel and Newberg in connection with the Civic Center construction job. The fact that the release recited how the net consideration of $798,982.25 was computed by showing certain deductions, did not in any manner operate to limit the release to the several items totaling $275,000. The release on its face shows it to be a full and complete release of all claims between the parties. Newberg was the general contractor and the subcontract between Steel and the Commission had been assigned to Newberg by the Commission. It is clear from the language of the release that in finishing up the outstanding payments due Steel as a result of the construction, the payment of May 10, 1967, was entered into by Steel and Newberg clearly to settle all questions of any claims as between the two parties (with certain specific exceptions). If any ques-

tion had arisen as to any amount that Steel owed Newberg, Newberg could have held this back from Steel or requested a recital excluding such claim in the general mutual release agreement. The claim of Perschke as against Newberg was known to both of the parties on May 10, 1967, when the release was signed, and it is clear that Newberg was, therefore, not releasing something about which he had no knowledge as was true in some of the cases cited by appellant.

In Todd v. Mitchell, supra, the court limited the effect of a general release so that it would not cover a matter about which the releasing party knew nothing at the time the release was signed. This was an appropriate interpretation of such release, since, to extend it would have included a transaction entirely different from the one clearly contemplated by the wording of the release. In Bassett v. Lawrence, 193 Ill 494, 61 NE 1098, cited by appellant, the parties entered into an agreement cancelling a prior contract and adjusting an indebtedness growing out of the prior contract. When one of the parties sued the other on a note arising out of an entirely separate transaction from the prior contract, the remaining party claimed that the wording of the general release had released liability under the note. The court limited the general words of the release to a release of the obligations under the prior contract only. This is not the situation in the case before us. If Newberg attempted to sue Steel for something arising out of a separate construction job, which had no relationship to the Civic Center project, the release could obviously not be asserted by Steel as a defense in that type of case. This would be similar to the Bassett case. In the case before us, the release involves only the Civic Center construction and was clearly designed to settle all matters between Steel and Newberg with respect to such construction.

In Kerr v. Schrempp, 325 Ill App 614, 60 NE2d 636 (cited by appellant), a situation similar to that in the

Bassett case existed. In the Kerr case, a bank released the maker of a specific obligation and the person released argued that the general language of the release also released him as joint maker on a completely different note which the bank was not in any manner authorized to release. The court properly limited the general wording of the release to the one transaction to which it was clearly made to apply.

A case illustrating the effect of a general release is Cwik v. Condre, 4 Ill App2d 380, 124 NE2d 612, where a widow had sued for damages for wrongful death of her husband. The action was by the widow as administratrix and a release for the amount awarded was given in open court and signed by the widow both as administratrix and as a widow. The widow then sued for injuries to herself individually, and defendant contended that the release signed at the conclusion of the former case was a bar. The court refused to limit the release to the claim for damages by reason of the death of the husband, but construed it also to be a release by the widow of her claim for injuries to herself. The general wording of the release which recited that it was applicable to the "accident which occurred on or about the 13th day of April 1946," was not limited to the wrongful death claim. The court in reading the various terms of the release concluded that a general release of all claims arising out of the particular accident was intended. Similarly, in the case before us, there would be no basis for limiting the effect of the release only to those matters specifically mentioned.

A leading case determining the issues which relate to the effect of the release is Rosenberg, Inc. v. Carson Pirie Scott & Co., 28 Ill2d 573, 192 NE2d 823. In that case, Lakeview Cemetery and McGrath Sand and Gravel Company had entered into an agreement for exchange of land. The contract provided that the sand and gravel company had an option to purchase certain lots and leave the cemetery company lateral support for its land. The

agreement also provided that the sand and gravel company would not sell any land to another cemetery association. The agreement, likewise, provided that if the sand and gravel company sold any of the land, the cemetery company "shall have the first refusal in case of a sale of any property in this paragraph described." The gravel company sold land to another cemetery association and a dispute arose between the cemetery company and the sand and gravel company. The cemetery company assigned all its rights under its contract to Rosenberg. A settlement was then agreed upon between McGrath Sand and Gravel Company and Rosenberg, and a release was signed by both parties which provided for a release of "any and all claims which have, in the past, arisen or may, in the future arise, or in any way grow out of any alleged breach or breaches by the McGrath Sand and Gravel Company, a corporation, of a certain contract entered into between Lakeview. . . ." The release provided that it excepted from the release the provisions in the original contract that McGrath Sand and Gravel Company would include in any deed conveying the land, a provision prohibiting use of the land for cemetery purposes. There was also a provision that the agreement for lateral support was still to continue in spite of the release.

■ After this release had been executed, McGrath Sand and Gravel Company sold some of the land and did not give Rosenberg (Lakeview's assignee) the right of first refusal. Rosenberg then filed its action and, in such action, the sand and gravel company contended that Rosenberg's right of first refusal was extinguished by the general release. The court concluded that the general terms of the release extinguished the first right of refusal. The court in referring to the general release stated (at page 578) "it specifically released and discharged all claims, past or future, arising out of the contract, with

32

the exception of the two provisions expressly excluded from the operation of the release." Even though the general release did not make any reference to the right of refusal, the court held that such right was extinguished under the wording of the general release. Similarly, in the case before us, even though the general release made no reference to indemnity for the Perschke claim, the release operated, effectively, to discharge such obligation. The court concluded that the release in the Rosenberg case was designed to settle all matters between the parties in regard to a prior agreement involving certain property. The release in the case before us was clearly and expressly designed to release all claims between Steel and Newberg with respect to the Civic Center job, including any that were not specifically mentioned. The clear wording of the written terms of the contract and the obvious intent of the parties, indicates that the trial court was correct in applying the release as a bar to any indemnity rights of Newberg.

On appeal in this Court, Newberg has also contended that there was at least an ambiguity in the written contract which should permit the court to hear parol evidence to show the negotiations of the parties surrounding the May 10, 1967, release. The provisions of the May 10, 1967, release were clear and the trial court correctly refused to look beyond the written terms of such release. The fact that the indemnity for the Perschke claim was not "talked about" as asserted by appellant, would not operate to limit the effect of the general release (Rosenberg, Inc. v. Carson Pirie Scott & Co., 28 Ill2d 573, 579, 192 NE2d 823).

The only remaining issue is whether the trial court was correct in concluding that Newberg would have been entitled to indemnity as an assignee of Contract No. 3 between the Commission and Steel. In view of our conclusion in this case, it is not necessary that we determine

this issue. We do not, however, desire that this opinion be construed as affirming the determination of the trial court in this respect. It is not necessary that this court express any opinion on such issue, in view of our determination that the release effectively barred any claim of Newberg as herein stated. The order of the Circuit Court granting the motion of Steel and directing judgment in favor of Steel was obviously proper.

The judgment of the Circuit Court of Cook County will, therefore, be affirmed.

Affirmed.

STOUDER, P. J. and RYAN, J., concur.