STANDARD STEEL & WIRE CORPORATION, Plaintiff-Appellant, *v.* A. FINKL & SONS CO., Defendant-Appellee.

(No. 56088;

First District—July 28, 1972.

Latchford, Bianucci, Rice & O'Brien, of Chicago, (James B. Rice, of counsel,) for appellant.

Joseph Rolnick, David B. Shapiro, Leonard Higley, and Robert C. Mitchell, all of Chicago, for appellee

Mr. PRESIDING JUSTICE LORENZ delivered the opinion of the court:

Plaintiff brought this action to enjoin defendant from interfering with plaintiff's use of an easement which ran over defendant's property. The trial court found in favor of defendant and dismissed plaintiff's action for want of equity. Plaintiff appeals contending that the court erred on the two points raised at trial, namely, that it had not released or abandoned the easement and that the doctrine of equitable estoppel did not prevent plaintiff from asserting its claim.

Plaintiff is the lessee of property which was immediately south of property owned by defendant. In 1946, the former owner of defendant's property granted plaintiff an easement running east and west adjacent to the north boundary of plaintiff's property. The easement was approximately 167 feet in length by a width of approximately eleven feet at its east end and nine feet at its west end. The purpose of the easement was to provide plaintiff with an "alleyway for maintenance, repair or

alteration of any building on the premises adjoining said alleyway owned by Grantee as well as for ingress and egress to and from the vacant portion of said lot five (5) to the West of Grantee's building located in the Southeast corner of said lot five (5)." A plat of survey which depicts the relationship of plaintiff's property to defendant's was admitted into evidence and is approximated below.

COURTLAND

The easement in question could be roughly defined by drawing a line which would connect A to B to C to D to E to A. It is obvious that automobiles could be driven through the easement alleyway and between a 17 foot opening between the northwest corner of the building on plaintiff's property and the southeast corner of the building on the west of defendant's property. In 1956 plaintiff constructed an addition to the west end of its building which completely blocked vehicular traffic through the space designated C-D, although it did leave enough room for pedestrian passage, to that part of plaintiff's land which remained vacant.

On June 18, 1957, plaintiff and the former owner of defendant's property, together with the owner of a parcel of land immediately north of defendant's property, executed a "Release of Easement." This document stated that by virtue of the provisions of various specified deeds, documents and agreements (none of which created the easement involved in this case) "certain easements were created (or reserved or modified)

over, upon and across a portion of [the parcels of land not belonging to plaintiff] for the construction thereon and use thereof of a railroad switch track, and for the construction thereon and use thereof of an additional future tract, among other things, for the use and benefit of [plaintiff's property] and the owners or occupants thereof from time to time." The release went on to state:

"WHEREAS, [the owners of the other parcels] desire to have the easements aforementioned and all rights, privileges and interests which [plaintiff] may have or may be entitled in and to said [other parcels] released and forever extinguished, and [plaintiff] is willing so to do; NOW, THEREFORE, in consideration of the payment by the [owners of the other parcels] to [plaintiffs] of the sum of One Dollar ($1.00), the receipt of which is hereby acknowledged, the [plaintiff] as the owner of said 'Parcel 1', for itself, its grantees, lessees, successors and assigns, hereby releases and abandons to the [owners of the other parcels] the easements and all rights with respect thereto created, reserved, confirmed or modified or arising from or by reason of the above numbered documents, with the intent that said easements and all rights with respect thereto shall henceforth cease and terminate and be forever extinguished, and the [plaintiff] does hereby convey and quitclaim unto each of the [owners of the other parcels] all the right, title and interest of [plaintiff] in and to the real estate owned by each of [the owners of the other parcels] *whether arising from or by reason of the provisions of the above numbered documents or arising from or by reason of the provisions of any other deeds, grants, agreements or easements whatsoever.*" (Emphasis added.)

On July 9, 1957, defendant became the owner of the property immediately north of and contiguous to plaintiff's property. Defendant then razed the two buildings upon its property and converted the area to use as an employee parking lot. Shortly afterward a doorway which opened directly onto the easement from the north side of plaintiff's building was bricked over and a new doorway was constructed on the east side of plaintiff's building, all of which was done at defendant's expense. Also, defendant extended a fuel oil filler pipe along the north wall of plaintiff's building to the street to enable the building to be serviced from the street.

After the buildings on defendant's property were razed it was possible to drive an automobile over defendant's property and onto the vacant land at the west end of plaintiff's property. This however could only be done by driving over a portion of defendant's land which was never subject to the easement. Plaintiff's employees were permitted to park in defendant's parking lot, but to do so they had to execute "release"

forms and they were issued keys to unlock a gate at the entrance. One of the "stipulations" on the "release" forms provided that the use of the parking area was temporary and could be terminated at any time.

■■ Plaintiff contends that the release executed on June 18, 1957, cannot operate as a release of the easement which is the subject of this litigation. Its contention in this regard is that the words of the general release are limited in effect by the preceding words which refer to certain particular easements. In support of this argument plaintiff cites *Bassett v. Lawrence* (1901), 193 Ill. 494, 61 N.E. 1098; *Todd v. Mitchell* (1897), 168 Ill. 199, 48 N.E. 35; and *Kerr v. Schrempp* (1945), 325 Ill.App. 614, 60 N.E.2d 636. Those cases were discussed and distinguished in *Perschke v. Westinghouse Electric Corp.* (1969), 111 Ill.App.2d 23, 30-31, 249 N.E.2d 698, 702-703. The court in *Perschke* noted the various factors which influenced the courts in the above cited cases and other cases of import in this area of the law. Some of the considered factors are the clear wording of the document, the intent and design of the parties, the knowledge of the releasing party, the relationship between the matter allegedly released and the privity of the parties, and the authority of the releasing party. In sum, the effect of the decision in *Perschke* was to point out that in cases such as the one at hand the intent of the parties is to be determined and that should be decided on a case by case basis with the court being guided but not controlled by any rigid rules of construction. This principle is stated at I.L.P. Releases § 26 as follows:

"The scope and extent of a release will depend on the intention of the parties as revealed by the language employed. General language in the release will not as a rule be so construed as to embrace future acts or wrongs or matters clearly not within the contemplation of the parties."

■■ Examination of the release executed in the instant case reveals that it was the clearly expressed intention of the parties to release not only the enumerated railroad easements, but also "all other rights, privileges and interests" to which plaintiff may be entitled in the other parcels of land.

This intention is further manifested by the language of conveyance and quit claim of all rights created by the enumerated documents and all other right, title and interest of plaintiff "arising from or by reason of the provisions of any other deeds, grants, agreements or easements whatsoever." Plaintiff urges that this document could not be construed as a quit claim deed because it does not conform to the statutory model * and is not generally in the tenor of a quitclaim deed. The document does contain the names of the granter and grantees, recitation of con-

---

* Ill. Rev. Stat. 1955, ch. 30, par. 9.

36

sideration, the words of conveyance, and the legal description of the property. Thus, the document is in substantial compliance with the statute and that, in the terms of the statute itself, is all that is required.

Our construction of the intention of the parties is bolstered further by the construction modifications of plaintiff's building as described above, a program which was obviously participated in by the agreement of both parties.

As a result of the views expressed in this opinion, it is unnecessary for us to consider the other arguments advanced by plaintiff.

The judgment is affirmed.

Judgment affirmed.

DRUCKER and ENGLISH, JJ., concur.