*In re* ESTATE OF KENNETH J. WILLIAMS, Deceased.—(Betty P. Williams, Ex'x of the Estate of Kenneth J. Williams, Petitioner-Appellant, *v.* Illinois Trust and Savings Bank, Respondent-Appellee.)

Third District   No. 82—194

Opinion filed October 19, 1982.

William J. Howard, of Brassfield, Cowan & Howard, of Rockford, for appellant.

George C. Hupp, Jr., and Gale F. Murrin III, both of Hupp, Irion and Hupp, P. C., of Ottawa, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

On December 14, 1979, Kenneth J. Williams and Thomas E. Bowers signed a note payable to the Illinois Trust and Savings Bank (ITS) in the amount of $5,000 due on or before March 22, 1980. The note was signed by Bowers individually and in his capacity as owner of the Bowers Excavating Company. No designation was given of the capacity in which Williams signed. Williams' signature appeared in the column for addresses on the note. A second note, in the amount of $22,000, was similarly executed by Bowers and Williams on January 2, 1980. The second note was due on or before April 1, 1980.

Kenneth J. Williams died on March 23, 1980. One day before his death, a renewal note for the remainder of the $4,500 indebtedness, to-wit, $3,626.37, was signed by Thomas Bowers individually and in his capacity as owner of the Bowers Excavating Company. A second renewal note for the remainder of the $22,000 indebtedness, to-wit, $17,902.74, was executed by Bowers on April 1, 1980.

Each of the subsequent notes, as well as the original notes, was secured by certain accounts receivable and by several pieces of personal property owned by Bowers Excavating Company. Assignments of the accounts receivable were executed, and ITS placed liens on and took possession of documents of title to certain vehicles owned by Bowers Excavating. Other loans made by ITS to Bowers Excavating were also secured by the same collateral.

Following Williams' death, ITS filed a claim against his estate for $21,529.11, the total amount due on the notes signed by Williams. The claim was routinely allowed, without notice, by the probate court on July 9, 1980, since no adverse pleadings had been filed by the Williams estate within 30 days of the date of the filing of the claim. Ill. Rev. Stat. 1981, ch. 110½, par. 18—5.

According to an affidavit signed by Stephen C. Myers, attorney

for the Williams estate, Myers contacted Frederick W. Irion, counsel for ITS, within 30 days of receipt of a copy of the bank's claim to request data relevant to the evaluation and defense of the claim. On July 17, 1980, attorney Myers mailed a letter to attorney Irion confirming his request for information upon which to evaluate and defend the claim. A second affidavit in the record, this one signed by attorney Irion, refutes attorney Myers' contention that he requested six specific types of information regarding the claim. Attorney Irion's affidavit also indicates that he was not requested by Myers to delay action on the claim; nor was any representation whatsoever made to him by attorney Myers regarding the presentation or manner of handling the claim. On July 25, 1980, attorney Irion referred attorney Myers to a vice-president of ITS for information regarding the claim. No mention of the allowance of the claim was made in attorney Irion's July 25 letter.

A letter from attorney Irion received by attorney Myers on January 7, 1981, was the first notice received by Myers that the ITS claim had been allowed. Slightly more than three weeks later, on January 23, 1981, the executrix of the Williams estate filed an Illinois inheritance tax return claiming a deduction for the $21,529.11 claim allowed by the probate court on July 9, 1980.

The Williams estate filed a motion to open up and vacate the claim allowance on September 15, 1981, some eight months after first learning of the claim's allowance. The trial court authorized discovery, following which an amended motion to open up and vacate the claim allowance was filed by the estate on December 23, 1981. Arguments of counsel were heard by the trial court on January 13, 1982. In a written order dated March 8, 1982, the trial court denied the estate's motion. The rationale for the trial court's decision was the estate's failure to demonstrate reasonable diligence in presenting any defense to the claim and, alternatively, the failure to raise any substantial defense which would justify the vacation of the claim allowance in the interest of justice and fairness.

The present appeal is taken by the Williams estate from the March 8, 1982, order. Our review of the lower court's decision is limited to the question of whether that decision demonstrates an abuse of the discretion accorded to trial courts in ruling on such motions. (*Beverly Bank v. Pentagon Investment Co.* (1981), 100 Ill. App. 3d 1074, 427 N.E.2d 835.) We find no abuse of discretion in the case at bar.

As a point of reference, we note that section 72 of the Illinois Civil Practice Act, under which the Williams estate filed its motion to

open up and vacate the claim allowance, has been recodified as section 2—1401 of the Illinois Code of Civil Procedure. (Ill. Rev. Stat. 1979, ch. 110, par. 72; Ill. Rev. Stat. 1981, ch. 110, par. 2—1401.) The language of former section 72 and new section 2—1401 is identical. Because the court decisions in the case at bar were rendered prior to July 1, 1982, the effective date of the new code, we will refer to the motion at issue as a section 72 petition.

To succeed in vacating the allowance of the claim via a section 72 petition, the Williams estate must affirmatively set forth facts showing both the exercise of due diligence on the part of the estate in presenting a defense to the ITS claim and in presenting the section 72 petition to the trial court. (*American Reserve Corp. v. Holland* (1980), 80 Ill. App. 3d 638, 400 N.E.2d 102.) This the estate has failed to do.

Why the estate did not file objections to the claim within 30 days of the May 3, 1980, filing date of the claim pursuant to section 18—5 of the Probate Act of 1975 (Ill. Rev. Stat. 1981, ch. 110½, par. 18—5) is not apparent. Attorney Myers' affidavit reveals that he was aware of the claim and spoke to counsel for ITS concerning it within the 30-day period. We also question the propriety of the probate court's allowance of the claim, without notice, when only the face of each note was attached to the claim. These questions are not now before us, however.

■ Despite the estate's attempt to mask its lack of diligence in filing the section 72 petition by focusing attention on the efforts made by the estate during the summer of 1980 to secure information from ITS relevant to the claim, we find no reasonable explanation given for the eight-month delay (from January 7, 1981, to September 15, 1981) in filing the petition once the estate learned that the claim had been allowed. Furthermore, we believe that attorney Irion's letter of July 25, 1980, to attorney Myers supplied sufficient information to enable the estate to evaluate any possible defenses to the claim and thus to act at a much earlier date to vacate the claim allowance. We must also wonder why attorney Myers did not discover the claim allowance through periodic review of the status of the Williams estate filed, particularly where, as attorney Myers indicated, the estate was somewhat complex and subject to numerous potential claims.

Clearly, the estate failed to exercise due diligence in the presentation of its section 72 petition. We turn now to an examination of the alleged defenses available to the estate. This examination is necessary since the estate's lack of due diligence in presenting its motion to vacate could be overlooked should justice and good conscience so require.

The alleged defenses are three in number: (1) a failure of consideration for the signature of Kenneth Williams on the two ITS notes in question; (2) impairment of collateral; and (3) discharge of Williams' liability on the notes by the reduction of the balance due on the notes to zero and the issuance of subsequent notes for the amount remaining due on the original notes and signed only by Thomas Bowers individually and in his capacity as owner of Bowers Excavating.

Kenneth Williams signed the $22,000 and $5,000 notes as an accommodation party; that is, as one who signs his or her name to a note without receiving any direction consideration but who does so with the intention of lending his credit to the accommodated party. (Ill. Rev. Stat. 1981, ch. 26, par. 3—415(1); *Marcus v. Wilson* (1973), 16 Ill. App. 3d 724, 306 N.E.2d 554.) Because there is no evidence to the contrary, it is assumed that Williams signed as an accommodation maker. Despite the lack of direct consideration running to an accommodation party, a creditor can proceed against the accommodation maker without first seeking a remedy against the principal. (Ill. Rev. Stat. 1981, ch. 26, par. 3—415; Ill. Ann. Stat., ch. 26, par. 3—415, Uniform Commercial Code Comment subsec. 1, at 301 (Smith-Hurd 1963).) In a direct action by a creditor, the accommodation maker cannot allege lack of consideration since the signature of the accommodation maker is supported by any monetary consideration given to the principal maker of the note. *Burke v. Burke* (1980), 89 Ill. App. 3d 826, 412 N.E.2d 204; *St. Charles National Bank v. Ford* (1976), 39 Ill. App. 3d 291, 349 N.E.2d 430.

Contrary to the estate's assertion, the accommodated parties in the instant case were Thomas Bowers and Bowers Excavating Company, who received credit, and not ITS. As the Comments to the Uniform Commercial Code state:

> "The essential characteristic is that the accommodation party is a surety, and not that he has signed gratuitously. *** As a surety the accommodation party is not liable to the party accommodated; but he is otherwise liable on the instrument in the capacity in which he has signed. *** The obligation of the accommodation party is supported by any consideration for which the instrument is taken before it is due." (Ill. Ann. Stat., ch. 26, par. 3—415, Uniform Commercial Code Comment subsecs. 2, 4, 3, at 302 (Smith-Hurd 1963).)

Thus, the fact that Williams signed as an accommodation maker and received no consideration provides no defense for the Williams estate to the ITS claim on the notes.

The notes signed by Williams were secured in part by an assign-

ment of accounts receivable in the amount of $70,391.50 from the Illinois Department of Transportation and accounts receivable in the amount of $44,408.80 from La Salle County. According to the deposition of ITS vice-president Michael J. McIntyre, the La Salle County Treasurer issued a check in the amount of $8,194.51 to Bowers Excavating on or about February 4, 1980. Of this amount, $4,097.26 was applied to Bowers' $22,000 indebtedness, reducing it to its remaining balance of $17,952.74. The remainder of the $8,194.51 payment was returned to Bowers Excavating to cover operating expenses. In like manner a check received from the Comptroller of the State of Illinois on or about February 16, 1980, in the amount of $8,028 was applied, in part, to the $5,000 indebtedness, reducing it to its present balance of $3,626.27. The remainder of the $8,028 payment was returned to Bowers Excavating.

■ The Williams estate contends that these actions by the bank impaired the collateral securing the notes. We disagree. The accounts receivable securing the two notes in question also served as collateral for several other notes issued by ITS to Bowers Excavating. A creditor is not bound, under these circumstances, to apply collateral to payment of only specific notes but may apply the collateral to the partial payment of other notes where, as here, there are no directions as to the application of the security. (11 Am. Jur. 2d *Bills and Notes* sec. 959 (1963).) We hold that the creditor bank acted reasonably here in returning the remaining portions of the collateral received to Bowers Excavating for operating expenses, since the remaining accounts receivable would become meaningless without the continued operation of the company.

Section 3—606 of the Uniform Commercial Code (Ill. Rev. Stat. 1981, ch. 26, par. 3—606(1)) restricts only unjustifiable impairment of collateral. No such impairment occurred. Furthermore, an accommodation party may not consent to the impairment of collateral and thereafter pursue a defense to enforcement of a note based on that impairment. (Ill. Rev. Stat. 1981, ch. 26, par. 3—606(1).) The verso of each note signed by Kenneth Williams contained the following language in the paragraph designated "Bank's General Rights": "The Bank may in its discretion before or after default: *** release collateral in its possession to Debtor, temporarily or otherwise; ***." By applying a portion of the collateral received to the two notes in question and returning the remaining portion to Bowers Excavating, the bank was merely exercising a right agreed to by Williams. Such action by the bank cannot be asserted as a defense by Williams' estate to enforcement of the notes.

*Godfrey State Bank v. Mundy* (1980), 90 Ill. App. 3d 142, 412 N.E.2d 1131, a case relied on by the Williams estate in support of its impairment-of-collateral defense, is distinguishable from the case at bar. In *Mundy,* the creditor bank sought foreclosure of a mortgage and a deficiency judgment against a former wife who had signed as an accommodation party. The mortgaged premises were damaged by fire, and the bank released $31,000 in insurance proceeds to the defendant's ex-husband and released a $10,000 mortgage on the property. Since the debt sought to be enforced against the ex-wife totalled only $38,686.25, the *Mundy* court held that the collateral, by being essentially extinguished, had been unjustifiably impaired, thus discharging the ex-wife. In the present case, the bank's disbursement of the collateral received did not in any sense extinguish it. The estate has failed in its burden to affirmatively demonstrate impairment.

The third defense asserted by the Williams estate, that of discharge, must also fail. Bank records indicate that the two notes in question were reduced to a zero balance, one day before in the case of the $5,000 note, and nine days after Williams' death in the case of the $22,000 note. A new note was issued on March 22, 1980, in the amount of $3,636.37, the balance remaining due on the original $5,000 loan. A note for $17,902.74, the amount remaining due on the $22,000 note, was issued on April 1, 1980. Both of the newly issued notes were signed by Thomas Bowers individually and in his capacity as owner of Bowers Excavating Company.

The Williams estate contends that the issuance of the new notes, without Williams' signature, discharges the estate from any liability on the notes. We disagree. The deposition of Michael J. McIntyre, vice-president of ITS, indicates that the reduction of the $22,000 and $5,000 notes to a zero balance and the issuance of new notes for the balance due on the notes on their respective due dates is standard bank practice and is done to facilitate internal accounting procedures. The intention is clearly to renew the notes. No cancellation is made of the previous obligation, nor are the outstanding notes surrendered prior to the issuance of the renewal notes.

■■ ■ To this set of facts, we apply the general rule as stated in *Continental Illinois National Bank & Trust Co. v. Cardwell* (1936), 287 Ill. App. 227, 4 N.E.2d 770, and quoted in *Community Bank v. Meister Brothers* (1973), 12 Ill. App. 3d 1004, 1008, 299 N.E.2d 589, 592: "The general rule is that where a note is given merely in renewal of another note and not in payment, the renewal does not extinguish the original debt nor change the debt except that it postpones the time of payment." It is possible that the issuance of a

renewal note may operate as a payment of and a discharge of the original note. To make this determination, the intention of the parties must be considered. The Williams estate has produced no evidence which rebuts the intention of the bank to issue renewal notes, as evidenced by Michael McIntyre's deposition.

In *Trego v. Estate of Cunningham* (1915), 267 Ill. 367, 108 N.E. 350, a creditor surrendered an old note containing the signatures of six indorsers, identified as such, and took a new note with the same indorsers with the exception of indorser Cunningham, who was dead. The question before the Illinois Supreme Court was that of contribution among the indorsers. However, the court volunteered the opinion that the creditor could not have brought an action against the Cunningham estate since the old note was surrendered. This case differs from the present case in two respects: first, the original notes in the case at bar were not surrendered prior to the issuance of the renewal notes; and second, Williams' signature as an accommodation maker or acceptor signifies liability that may differ from that of an accommodation indorser. Comments to the Uniform Commercial Code state that: "An accommodation maker or acceptor is bound on the instrument without any resort to his principal, while an accommodation indorser may be liable only after presentment, notice of dishonor and protest." Ill. Ann. Stat., ch. 26, par. 3—415, Uniform Commercial Code Comment subsec. 1, at 301 (Smith-Hurd 1963).

For the foregoing reasons, we hold that the Williams estate has failed to demonstrate either due diligence in presenting its motion to vacate or any meritorious defenses to the claim of ITS. Accordingly, the order of the circuit court of La Salle County is affirmed.

A motion by the appellee, ITS, to strike a portion of the estate's reply brief has been taken with the case. On page seven of its reply brief, the estate refers to the deductions taken for the ITS claim on the estate's State and Federal tax returns. Mention is made of the fact that the deduction claimed on the Federal tax return for the ITS claim was disallowed. An exhibit consisting of a letter and attachments from an Internal Revenue Service agent received by the estate in May 1982 is attached to the estate's reply brief in support of its statement that the claim was disallowed on the estate's Federal tax return.

The appellee's motion to strike contends that no argument has ever been made regarding the allowance or denial of any claimed deduction on the estate's tax returns and that the allowance or disallowance of the deduction is completely *dehors* the record. Objections to the motion to strike received from the estate contend that the ITS

brief does make an argument of the claim deduction. Thus, the estate argues that it has a right to respond.

■■ We agree with ITS that the reference to the deduction taken by the estate was made only to demonstrate the estate's knowledge of the claim and for no other purpose. Therefore, we allow the appellee's motion to strike the specified portions of the estate's reply brief, noting the objections filed by the estate.

Affirmed.

BARRY, P. J., and HEIPLE, J., concur.