FARM CREDIT BANK OF ST. LOUIS, as Successor to the Federal Land Bank of St. Louis, Plaintiff-Appellant, v. WALTER H. WHITLOCK *et al.*, Defendants-Appellees.

Fourth District   No. 4—89—0379

Opinion filed September 13, 1990.—Rehearing denied October 17, 1990.

GREEN, J., dissenting.

Law Offices of Gustine & Theivagt, Ltd., of Carrollton (Claude C. Gustine, of counsel), for appellant.

Steven Mottaz, of Thomas, Mottaz, Eastman & Sherwood, of Alton, for appellees Walter Whitlock, Mary Whitlock, Darrell Whitlock, and Barbara Whitlock.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

This appeal involves the discharge of both debtor and accommodation party through the failure of their creditor to expressly reserve recourse rights upon release of a debt instrument over farmland in Greene County, Illinois. (Ill. Rev. Stat. 1987, ch. 26, par. 3—606(1)(a).) We affirm.

Plaintiff Farm Credit Bank is a creditor of all defendants, including both the Whitlock children, Darrell L. Whitlock, Barbara S. Whitlock, Ronald K. Whitlock, Patricia Whitlock, Richard A. Whitlock, and Helen M. (Whitlock) Phillips, and the Whitlock parents, Walter H. Whitlock and Mary G. Whitlock. A brief history of their credit transaction follows.

In January of 1977, the Whitlock children approached plaintiff to finance the purchase of additional land for their farming operation. Plaintiff initially refused to extend the Whitlock children full credit on their loan application due to insufficient collateral. After further negotiation, however, plaintiff agreed to loan the Whitlock children the en-

tire purchase price of the land provided that the Whitlock parents would stand their farm as security on the transaction. See Ill. Rev. Stat. 1987, ch. 26, par. 3—415(1).

Plaintiff ultimately arranged the following bifurcated credit transaction for defendants: (1) a debt instrument in the principal amount of $214,200 (loan No. 382076—1) for the down payment secured by the excess realty equity of the Whitlock parents and (2) a debt instrument in the principal amount of $255,000 (loan No. 382075—2) for the remainder of the purchase price secured by the new land of the Whitlock children. The former instrument was executed by all of the defendants on February 9, 1977; the latter instrument was executed by only the Whitlock children on February 10, 1977. It was understood by all concerned that defendants had orally agreed the Whitlock parents would continue payment on their preexisting mortgage, while the Whitlock children would start payment on the excess debt under the credit transaction.

The Whitlock children subsequently defaulted on repayment of the loan. In January 1985, to avoid foreclosure, they negotiated a transfer of the new land deed to plaintiff in exchange for a mutual release of liability on the credit transaction.

In January 1987, plaintiff filed the instant action against defendants to foreclose the mortgage on the farm of the Whitlock parents. Defendants responded with an affirmative defense, alleging the deed-back liability release acted as a bar to the foreclosure action. See Ill. Rev. Stat. 1987, ch. 110, par. 2—613(d).

In April 1988, relying solely on their affirmative defense, defendants filed for summary judgment in the action. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—1005.) The circuit court ruled in favor of defendants on that motion. In support of its ruling, the court found (1) the credit arrangements constituted a single financial transaction; (2) the deed-back liability release was a general release encompassing the liability of the Whitlock children on the entire purchase price of the new land; and (3) the Whitlock parents were accommodation parties who had been discharged of liability through the failure of plaintiff to expressly reserve recourse rights upon release of the underlying debt instrument. See Ill. Rev. Stat. 1987, ch. 26, par. 3—606(1)(a).

In May 1988, plaintiff successfully petitioned the circuit court to reconsider its summary judgment ruling. Plaintiff then counterfiled for summary judgment in the action. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—1005.) In March 1989, the court reaffirmed its earlier findings and again entered summary judgment in favor of defendants.

In April 1989, plaintiff once more petitioned the circuit court to reconsider its summary judgment ruling. Upon denial of that petition, plaintiff filed for a change of venue in the action. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—1001(a)(2).) The court summarily denied that motion as being both frivolous and untimely.

Plaintiff now appeals with enforcement of the judgment below stayed during impending litigation.

Plaintiff initially contends the circuit court misconstrued the scope of the deed-back liability release in the underlying credit transaction. This contention is without merit.

The deed-back liability release provides in pertinent part:

"As a part of the consideration of this agreement, Borrower, and each of them if more than one, for Borrower and for the heirs, personal representatives, successors and assigns of Borrower, does hereby remise, release and forever discharge The Federal Land Bank of St. Louis, the Federal Land Bank Association of Carrollton-Carlinville, Illinois, and the officers, employees, directors and stockholders thereof, and *Bank*, for itself and its successors and assigns, *does hereby* remise, *release and forever discharge Borrower*, and each of them if more than one, of and from all manner of actions, causes and causes of action, suits, debts, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, claims and demands, whatsoever, at law or in equity, and *particularly without limiting the generality of the foregoing all claims relating to the mortgage loan transaction aforesaid and the conveyance of title hereunder, which either party* and their respective heirs, personal representatives, successors, assigns and agents *ever had, now have or may have in the future*, for, upon or by reason of any matter, cause or thing, whatsoever." (Emphasis added.)

■ "A release is a contract wherein a party abandons a claim to the person against whom the claim exists." (*Touhy v. Twentieth Century-Fox Film Corp.* (1979), 69 Ill. App. 3d 508, 512, 387 N.E.2d 862, 865.) When that party executes the release with full knowledge of its legal significance, he will subsequently be barred from filing any such contemplated cause of action. *Chicago Transit Authority v. Yellow Cab Co.* (1982), 110 Ill. App. 3d 379, 383, 442 N.E.2d 546, 549.

■ Since a release is a contract, its interpretation is governed by the construction rules of contract law. (*Shultz v. Delta-Rail Corp.* (1987), 156 Ill. App. 3d 1, 10, 508 N.E.2d 1143, 1148.) Under these

rules, the circuit court is to interpret the scope and effect of the release in a manner consistent with the intent of the parties at the time of execution. (*Porter v. Ford Motor Co.* (1983), 96 Ill. 2d 190, 194, 449 N.E.2d 827, 830.) Such intent is best evidenced by the language of the release itself and the circumstances surrounding its transaction. *Whitehead v. Fleet Towing Co.* (1982), 110 Ill. App. 3d 759, 762-63, 442 N.E.2d 1362, 1365.

■ We view the deed-back liability release as a general release. Considering the bifurcated nature of the underlying credit transaction, as well as the comprehensive language of discharge, it is reasonable to infer the parties intended the scope of the release to encompass the liability of the Whitlock children on the entire purchase price of the new land. That inference is strengthened by the fact deed-back transfer also placed the Whitlock children in an immediate risk of default for their share of payments under the debt instrument on the farm of the Whitlock parents. See *Murphy v. S-M Delaware, Inc.* (1981), 95 Ill. App. 3d 562, 420 N.E.2d 456; *Perschke v. Westinghouse Electric Corp.* (1969), 111 Ill. App. 2d 23, 249 N.E.2d 698; *Cwik v. Condre* (1954), 4 Ill. App. 2d 380, 124 N.E.2d 612.

Plaintiff next contends the circuit court erred in finding the Whitlock parents were accommodation parties who had been discharged of liability through the failure of their creditor to expressly reserve recourse rights upon the release of the underlying debt instrument. (See Ill. Rev. Stat. 1987, ch. 26, par. 3—606(1)(a).) We disagree.

Section 3—606 of the Uniform Commercial Code—Commercial Paper details the limited conditions under which a party to an instrument will be discharged of liability on the underlying debt. That section provides in pertinent part:

> "(1) *The holder discharges any party to the instrument to the extent that without such party's consent the holder*
>
> > (a) *without express reservation of rights releases* or agrees not to sue *any person against whom the party has to the knowledge of the holder a right of recourse* or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary ***."
> > (Emphasis added.) Ill. Rev. Stat. 1987, ch. 26, par. 3—606(1)(a).

■ The Illinois Supreme Court defined the scope of application of

these discharge conditions in *Wohlhuter v. St. Charles Lumber & Fuel Co.* (1975), 62 Ill. 2d 16, 338 N.E.2d 179. The court specifically ruled "the term 'any party' *** was intended to include parties who sign negotiable instruments ostensibly as makers but who are in fact sureties or accommodation makers." (*Wohlhuter*, 62 Ill. 2d at 20, 338 N.E.2d at 182.) It therefore follows the debtor and his accommodation party will both be discharged of liability through the failure of their creditor to expressly reserve recourse rights upon the release of the underlying debt instrument. See Ill. Rev. Stat. 1987, ch. 26, par. 3—606(1)(a).

■ In Illinois, an accommodation party is an individual who signs a debt instrument in any capacity, including that of a maker, for the purpose of lending the credit of his name to another party on that instrument. (See Ill. Rev. Stat. 1987, ch. 26, par. 3—415(1); see also *Godfrey State Bank v. Mundy* (1980), 90 Ill. App. 3d 142, 144, 412 N.E.2d 1131, 1134.) Although the accommodation party formerly had to sign the debt instrument "without receiving value therefor," accommodation status is now dependent upon a factual determination that the individual acted as a surety in signing off on the underlying credit transaction. (Ill. Ann. Stat., ch. 26, par. 3—415(1), Illinois Code Comment, at 298 (Smith-Hurd 1963); see also *Godfrey*, 90 Ill. App. 3d at 144, 412 N.E.2d at 1134.) An individual will thus be regarded as an accommodation party in the following instances: (1) the individual did not participate in either the initial negotiation or any subsequent modifications of the credit transaction; (2) the individual was not the one seeking credit; (3) the individual was not the one to whom the loan proceeds were credited; and (4) the individual had no interest in the purpose for which the loan proceeds were used. See *Aurora Firefighter's Credit Union v. Harvey* (1987), 163 Ill. App. 3d 915, 920, 516 N.E.2d 1028, 1032; *Godfrey*, 90 Ill. App. 3d at 144-47, 412 N.E.2d at 1134-37; *Holcomb State Bank v. Adamson* (1982), 107 Ill. App. 3d 908, 911, 438 N.E.2d 635, 638.

■ Applying these principles here, we believe the Whitlock parents acted as sureties in signing off on the debt instrument in the underlying credit transaction. First, the Whitlock parents did not initiate the credit negotiations in the action. Rather, they took part in those negotiations only after plaintiff had refused to extend the Whitlock children full credit on their loan application without additional collateral standing as security. Second, the Whitlock parents did not intend to assume the primary responsibility for repayment of the debt instrument in the underlying credit transaction. Notwithstanding financial documentation, it was understood by all concerned that

defendants had orally agreed the Whitlock parents would continue payment on their preexisting mortgage, while the Whitlock children would start payment on the excess debt under the transaction. Third, the Whitlock parents did not benefit from the credit negotiations in the action. The proceeds of the debt instrument were used by defendants for the following purposes: (1) to pay off the closing fees (.01%) and stock participation certificates (.05%) for the loan; (2) to refinance the preexisting mortgage (.19%) on the farm of the Whitlock parents; and (3) to cover the down payment (.75%) on the new land of the Whitlock children. As such, the Whitlock parents simply substituted new debt for old debt under the transaction without effecting any other change in their net fiscal position. (See *In re Estate of Williams* (1982), 109 Ill. App. 3d 828, 834-35, 441 N.E.2d 412, 417.) Consequently, the circuit court did not err in finding the Whitlock parents were accommodation parties who had been discharged of liability on the debt instrument in the underlying credit transaction.

Plaintiff further contends the circuit court erred in denying its venue motion in the action. (See Ill. Rev. Stat. 1987, ch. 110, par. 2—1001(a)(2).) This contention is without merit.

Section 2—1001 of the Code of Civil Procedure details the application process for a change of venue in a civil cause of action. That section provides in pertinent part:

"(a) *A change of venue in* any civil action *may be had* in the following situations:
* * *

(2) Where any party or his or her attorney fears that he or she will not receive a fair trial in the court in which the action is pending, *because* the inhabitants of the county are or *the judge is prejudiced* against him or her, or his or her attorney, or the adverse party has an undue influence over the minds of the inhabitants. In any such situation the venue shall not be changed except upon application, as provided herein, or by consent of the parties.
* * *

(c) Every application for a change of venue by a party or his or her attorney shall be by petition, setting forth the cause of the application and praying a change of venue, which petition shall be verified by the affidavit of the applicant. *A petition for change of venue shall not be granted unless it is presented before trial or hearing begins and before the judge to whom it is presented has ruled on any substantial issue in the case,* but if any ground for such change of venue occurs thereafter, a peti-

tion for change of venue may be presented upon such ground." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 110, pars. 2–1001(a)(2), (c).

A motion for a change of venue must be filed at the earliest practical moment in an action. (See *Fennema v. Joyce* (1972), 6 Ill. App. 3d 108, 111, 285 N.E.2d 156, 158.) Such a motion is untimely when its application follows either the commencement of a hearing on the merits or the entry of a ruling on any substantive issue in the action. (See Ill. Rev. Stat. 1987, ch. 110, par. 2–1001(c).) The underlying policy rationale is the avoidance of forum shopping (*American State Bank v. County of Woodford* (1977), 55 Ill. App. 3d 123, 128, 371 N.E.2d 232, 236), in that a litigant should not "be permitted first to form an opinion that the trial court might be unfavorably disposed toward his cause, and then charge the court with prejudice as a basis for a change of venue." *Templeton v. First National Bank* (1977), 47 Ill. App. 3d 443, 446, 362 N.E.2d 33, 36.

We do not believe plaintiff filed its venue motion in a timely manner. Although the alleged "pro-farming/anti-banking" sentiment of the trial judge was at least partly manifest prior to commencement of the hearing below, plaintiff nevertheless waited until after that judge had entered an unfavorable ruling on the issue of summary judgment to file its motion for a change of venue in the action. That ruling unquestionably concerned a substantive legal issue. (*Lebovitz v. Cahill* (1979), 69 Ill. App. 3d 614, 387 N.E.2d 943.) Under these circumstances, the circuit court did not err in denying the venue motion.

Plaintiff last contends the circuit court erred in entering summary judgment in favor of defendants. We disagree.

The standards governing the entry of summary judgment are not in dispute. Summary judgment is proper only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ill. Rev. Stat. 1987, ch. 110, par. 2–1005(c).

As discussed in detail above, we are not persuaded plaintiff established a factual basis for limiting the scope of the deed-back liability release in the underlying credit transaction. (See *Blaylock v. Toledo, Peoria & Western R.R. Co.* (1976), 43 Ill. App. 3d 35, 37, 356 N.E.2d 639, 641.) Plaintiff simply neglected to take proper advantage of its legal rights as a creditor. (See Ill. Rev. Stat. 1987, ch. 26, par. 3–606(1)(a).) Accordingly, the circuit court did not err in ordering summary judgment in favor of defendants.

The order of the Greene County circuit court granting summary

judgment in favor of the defendants is affirmed.

Affirmed.

McCULLOUGH, J., concurs.

JUSTICE GREEN, dissenting:
I cannot agree with the majority that the record shows, as a matter of law, that the settlement agreement discharged the Whitlock children as to the February 9, 1977, loan secured by the mortgage on the parents' farm. Thus, the record did not show, as a matter of law, that the indebtedness underlying the mortgage, for which foreclosure was sought, was discharged as to the mortgagors pursuant to section 3—606 of the Uniform Commercial Code—Commercial Paper. Accordingly, I would reverse the summary judgment entered for defendants and remand for further proceedings.

I recognize the strong force of the statement in the release that the bank releases the borrowers *"from all manner of actions, * * * and particularly without limiting the generality of the foregoing* all claims relating to *the mortgage loan transaction aforesaid* and the conveyance of the title hereunder, which *either party * * * ever had, now have* or *may have* in the future." (Emphasis added.) However, such general language is not always conclusive of the scope of a release. (*Ainsworth Corp. v. Cenco, Inc.* (1987), 158 Ill. App. 3d 639, 650, 511 N.E.2d 1149, 1156; *Gladinus v. Laughlin* (1977), 51 Ill. App. 3d 694, 366 N.E.2d 430; *Perschke v. Westinghouse Electric Corp.* (1969), 111 Ill. App. 2d 23, 249 N.E.2d 698.) The entire instrument may be examined and, if it is found to be ambiguous, extrinsic facts may be examined. (*Murphy v. S-M Delaware, Inc.* (1981), 95 Ill. App. 3d 562, 565, 420 N.E.2d 456, 459.) The release makes no reference to the total credit transaction involved, and the majority examines that transaction in reaching its interpretation of the release agreement.

I agree the release is sufficiently ambiguous on its face to permit examination of extrinsic facts. The only indebtedness referred to in the release is the indebtedness of the February 10, 1977, loan in the original principal sum of $255,000. The release recites the borrowers' desire to convey the real estate mortgaged by that loan to the bank "in exchange for a *release from personal liability,* including any deficiency, *in connection with said indebtedness."* (Emphasis added.) The release agreement also recites that (1) the borrowers acknowledge they have requested the transaction concerning the release; (2) the release of the borrowers from "said indebtedness" is fair value for the

conveyance of the real estate; and (3) the release is the "sole inducement" for the conveyance of the tract mortgaged by the Whitlock sons. Thus, the instrument does not unambiguously set forth an intent to release the Whitlock sons and wives as to the other note.

I find very little in the surrounding circumstances to indicate any intention of the parties to the release agreement to also release the Whitlock sons and wives from the very substantial indebtedness of the February 9, 1977, loan. I do not see how the close relationship between the two loans creates any inference that the bank or the Whitlocks intended the release to forgive the earlier note as well. Rather, because of the close relationship between the two loans, the parties would have been more likely to have referred to the February 9, 1977, loan in the release agreement if the indebtedness of the Whitlock children on that loan were also to be released.

The two most favorable factors to indicate that a release of both notes was intended are (1) a provision in the release agreement making it contingent upon the ability of the bank to obtain a title policy for the farm being conveyed to it in the amount of $280,000; and (2) the natural desire the children would have had to clear all other liability at the same time. The sum of $280,000 was in excess of the balance of the indebtedness on the February 10, 1977, loan and this could have indicated a willingness on the part of the bank to give up more than the indebtedness on that loan in order to obtain the farm to be conveyed.

From the standpoint of the bank, any theory it intended to release the children from liability on both loans presupposes a lack of understanding upon the part of its agents as to the jeopardy such a release would have as to the security for the February 9, 1977, loan. This seems unlikely, and the most likely explanation for the inclusion of the general language in the release is that it was placed there by inadvertence. The language of the release concerning the amount of the title insurance policy is countered by language in the release stating that the release on the note mentioned there is deemed to be sufficient consideration for the conveyance. The children would, no doubt, have been interested in discharging all of their liability at the same time, but, as the bank had greater security for the February 9, 1977, loan, it may well have been pushing harder for payment on the February 10, 1977, loan thus requiring a settlement in that respect sooner.

The majority agrees the release should be interpreted according to contract law. Evidence of the construction of a contract placed upon it by the subsequent conduct of the parties is relevant to show

intent of parties when that is doubtful. (*Pocius v. Halvorsen* (1963), 30 Ill. 2d 73, 195 N.E.2d 137.) Here, the evidence of dealings of the parties to the release, after its execution and prior to litigation is entirely consistent with the release being limited to the February 10, 1977, note. Under the circumstances shown here, I do not deem a summary judgment for the defendants to have been proper.