AINSWORTH CORPORATION, Plaintiff-Appellant, *v.* CENCO, INC., *et al.*, Defendants-Appellees.

First District (5th Division)   No. 81-486

Opinion filed June 11, 1982.

Meyer, New, Berlin & Braude, of Chicago (Arthur E. Berlin and Curtis E. Sahakian, of counsel), for appellant.

James M. Amend and Bruce A. Featherstone, both of Kirkland & Ellis, of Chicago, for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff Ainsworth Corporation (Ainsworth) appeals from an order of the circuit court of Cook County granting summary judgment in favor of defendants Cenco Corporation and Sherwood Irvin (Cenco).

Plaintiff's sole contention on appeal is that genuine issues of material fact remain with respect to whether the terms of a general release preclude the institution of a tort action against the defendants for fraud in the inducement of a contract.

Material to our disposition are the following facts.

In June of 1976, plaintiff and defendants entered into an asset purchase agreement whereby plaintiff agreed to purchase, among other assets, all of the inventory and operating assets of the Medical Products Group of Cenco Medical Industries, Inc., a wholly owned subsidiary of Cenco. The Medical Products Group was engaged in the manufacture and sale of medical sutures and related hospital and medical products.

A section of the asset purchase agreement entitled "Representations and Warranties of Sellers and Cenco" contained a provision which stated that the Medical Products Group manufacturing processes and sterility procedures implemented under Cenco were in compliance with State and Federal safety laws, including the U.S. Pure Food and Drug Act. It provided in pertinent part that: "to the best of [Cenco's] knowledge none of the properties owned, occupied or operated by [Cenco], nor the ownership, occupancy or operation thereof, is, to any extent materially and adversely affecting the business of [Cenco], in violation of any law, ordinance or regulation or * * * federal, state and local safety laws, regulations and ordinances (including * * * the United States Pure Food and Drug Act, or similar laws and regulations * * *.)"

The consideration for this asset purchase agreement included a small amount of cash at closing, a one-year promissory note for $200,000 and

$435,000 of Ainsworth preferred stock. The stock was convertible into a debt instrument in the event of Ainsworth's failure to pay dividends and made redemptions as specified in the asset purchase agreement schedule.

Shortly after consummation of the purchase, a dispute arose between the parties which persisted for several months. Ainsworth alleged that there were substantial discrepancies in Cenco's statements concerning the liabilities and assets of the Medical Products Group, particularly relating to inventory assets. Ainsworth subsequently defaulted upon its promissory note payments and stock redemption obligations.

At the request of Ainsworth's president, Joseph Cvengros, both parties entered into a letter agreement in January of 1977 "in order to resolve the existing dispute between us."

This settlement agreement stated that:

> "[Cenco has] contended that Ainsworth is in default with respect to certain of its obligations thereunder * * *. The [Asset Purchase] Agreement also contains various representations and warranties by [Cenco] and [Ainsworth] contend[s] that certain of those representations and warranties have been breached. In order to resolve the existing dispute between us, we have all agreed to the following * * *."

In the settlement agreement, Cenco agreed to substantial financial concessions as to plaintiff's payment obligations, including a reduction of interest on the $200,000 note, a 10-month deferral of any payments on the note, a 15-month deferral of stock dividend payment and redemption, and a waiver of past defaults.

The settlement agreement further provided "that the representations and warranties of [Cenco] in the [Asset Purchase] Agreement shall all expire on the date of [the settlement agreement] *and Ainsworth and Cvengros waive any breach of any of such representations, warranties or covenants, or any default under the agreement which may have occurred prior to the date of this agreement.*" (Emphasis added.)

Approximately four months later, the U.S. Food and Drug Administration investigated the medical products facilities acquired by the plaintiff from Cenco, in order to ascertain its compliance with the Federal Food, Drug and Cosmetic Act.

The investigation revealed that the plaintiff's manufacturing process of the medical products and sterility procedures, originally instituted by Cenco and continued under Ainsworth, violated Federal regulations.

The sanctions for noncompliance included a forced recall of medical products, which included products sold both by plaintiff and previously by defendants; and the manufacturing facility was rendered nonoperational for approximately six months.

Ainsworth subsequently defaulted on the payment terms embodied

in the settlement agreement. Cenco filed suit against plaintiff and obtained a favorable $478,634 judgment by confession on its note on June 2, 1978.

One week later, plaintiff petitioned for injunctive relief and monetary damages, and alleged that defendants had fraudulently induced it to purchase the medical products group by misrepresenting that it was being operated in accordance with government manufacturing and sterility procedures.

Defendants filed a verified answer which asserted several affirmative defenses, including plaintiff's waiver of any rights arising out of any breach of a warranty or representations in the asset purchase agreement, by virtue of the terms of the settlement agreement. Plaintiff did not file a reply.

Following disposition of plaintiff's motion for injunctive relief, this cause was transferred to the law division, whereupon defendants moved for summary judgment. On the day of the hearing on the motion, plaintiff filed an affidavit signed by its president, Cvengros, who set forth, *inter alia*, (1) that during the course of negotiations he asked and received assurances from Cenco that the medical products facilities fully complied with the law, which he relied upon in entering into the asset purchase agreement; (2) that the disputes resolved by the settlement agreement did not involve any question of compliance with FDA regulations, and (3) that both parties were silent with regard to such question in the negotiations leading up to and including the execution of the settlement agreement. Following this hearing, the trial court granted defendants' motion for summary judgment and this appeal was taken.

OPINION

We preface our discussion by noting that the purpose of a summary judgment proceeding is to determine whether issues of fact exist between the parties; and if the proceeding discloses issues of fact, the motion must be denied. (*Morris v. Anderson* (1970), 121 Ill. App. 2d 169, 259 N.E.2d 601.) Summary judgment provides the means of disposing of cases with dispatch, but it is a drastic method and should be allowed only when the right of the party to invoke summary judgment is clear and free from doubt. *Kolakowski v. Voris* (1979), 76 Ill. App. 3d 453, 395 N.E.2d 6.

Since facts, not conclusions, must be presented, the trial court may not draw inferences on a motion for summary judgment. (*State Farm Mutual Automobile Insurance Co. v. Short* (1970), 125 Ill. App. 2d 97, 260 N.E.2d 415.) Moreover, if the issue is debatable the drastic remedy of summary judgment should not be granted where the facts, although not in dispute, are subject to conflicting inferences and the parties disagree as to

what their intention was as shown by the facts. *Lesser v. Village of Mundelein* (1975), 36 Ill. App. 3d 433, 344 N.E.2d 29.

We turn first to consider plaintiff's argument that genuine issues of material fact remain with respect to whether the settlement agreement release bars a subsequent action against defendants for fraud in the inducement of the asset purchase agreement.

In the case before us, the trial court found that the terms of the settlement agreement between these parties was unambiguous and effectively barred the subsequent tort action, as a matter of law. Although whether any contract is or is not ambiguous is ordinarily a question of law for initial determination by the trial court, we do not agree with the result reached in the present case where the taint of fraud has been alleged.

A careful review of the record does not disclose an unequivocal denial by defendants that fraudulent representations were not in fact made to the plaintiff. Instead, defendants persistently argue that the plain language of the settlement agreement waiving "any breach of any such representations" wholly precludes any interpretation to the contrary.

■■ We are not persuaded by defendants' argument. Since a release is a contract, its construction is governed by the rules of law that prevail in contract cases (*Affiliated Realty & Mortgage Co. v. Jursich* (1974), 17 Ill. App. 3d 146, 308 N.E.2d 118), and no form of words, no matter how all encompassing, will foreclose scrutiny of a release (*Florkiewicz of Gonzalez* (1976), 38 Ill. App. 3d 115, 347 N.E.2d 401) or prevent a reviewing court from inquiring into surrounding circumstances to ascertain whether it was fairly made and accurately reflected the intention of the parties. *Willis v. Reum* (1978), 64 Ill. App. 3d 146, 381 N.E.2d 46.

Accordingly, we have carefully examined, *in toto*, the circumstances surrounding the execution of the release which were raised by the pleadings.

For the sake of clarity, we will first address the effect of any fraud in the inducement of the original contract, the asset purchase agreement.

■■ In order to constitute "fraud invalidating a contract" a representation (1) must be one of material fact which has been made for the purpose of inducing the other party to act, (2) must be known to be false by the maker, but reasonably believed to be true by the other party, and (3) must be relied upon by such other party and acted upon to his damage. *Shanahan v. Schindler* (1978), 63 Ill. App. 3d 82, 379 N.E.2d 1307.

Such fraud in the inducement vitiates all contracts (*Shanle v. Moll* (1974), 25 Ill. App. 3d 113, 323 N.E.2d 148) and renders it voidable at the option of the injured party. *Bresler Ice Cream Co. v. Millionaires Club, Inc.* (1966), 71 Ill. App. 2d 342, 218 N.E.2d 891.

Defendants strenuously argue, however, that while Ainsworth has

alleged fraud which would vitiate the asset purchase agreement, the subsequent release was not tainted by fraudulent representations and was freely entered into by both parties. Consequently, defendants contend that no genuine issues of material fact remain with respect to fraud in the inducement of the release. We disagree.

■■ Generally, a party who was fraudulently induced to enter into a contract for the acquisition of property, but who later receives some substantial concession from, or enters into a new contract with the party guilty of fraud, with knowledge of the prior deception, thereby relinquishes all right to recover damages because of the misrepresentations. However, the question of whether a settlement of a claim for fraud has been effected as a part of a subsequent transaction between the parties is a question of fact. See 37 Am. Jur. 2d *Fraud & Deceit* sec. 397 (1968).

■■ As the court in *Shanahan v. Schindler* (1978), 63 Ill. App. 3d 82, 94, 379 N.E.2d 1307, succinctly stated: "It is true that one may waive a defense of fraud by entering a new contract; however, *knowledge of the fraud at the time of signing the [second contract] is a prerequisite to such waiver.* [Citations.] The representation in this case was of a continuing character, and [the injured party] was entitled to rely upon it until informed otherwise. See 37 Am. Jur. 2d *Fraud & Deceit* §242 (1968). To hold otherwise in this case would establish a precedent whereby a party, who fraudulently induces one to enter a contract, could eliminate the defense of fraud by merely managing to execute a [second] contract, with some modified terms, without disclosing the original fraud. Such a result would clearly be contrary to the established principle that a party committing fraud should be precluded from benefiting therefrom." (Emphasis added.)

■■ Since a determination of whether or not fraud has been waived is generally a question of fact, and the significance of silence or inaction after discovery of fraud is also to be determined by the trier of facts in the light of all the circumstances (see 37 Am. Jur. 2d *Fraud & Deceit* sec. 386 (1968)), we find that genuine issues of material fact remain which were not proper matters for disposition by summary judgment.

We next consider plaintiff's contention, apparently in the alternative to its theory of fraud, that the settlement agreement release was entered into solely as a limited release of contractual claims which related to a disputed inventory shortfall. In response, Cenco argues that plaintiff intended to bargain away any claims that it might have had in order to gain substantial financial concessions in its payment obligations from Cenco.

We find that this is an additional and independent ground to deny the all-inclusive effect of the release in question. Illinois courts have uniformly held that the scope and extent of a release is controlled by the intent of the

parties signing it. (*Pate v. City of Sesser* (1979), 75 Ill. App. 3d 233, 393 N.E.2d 1146.) Such intent is determined from the language of the release when read in light of all circumstances surrounding the transaction. (*Gladinus v. Laughlin* (1977), 51 Ill. App. 3d 694, 366 N.E.2d 430.) As the *Gladinus* court stated: "Under this approach, Illinois courts will restrict the language of a general release to the thing or things intended to be released and refuse to interpret generalities so as to defeat a valid claim not then in the minds of the parties." 51 Ill. App. 3d 694, 696.

■■ Since we have consistently held that where the parties seek to draw inferences on a question of intent, a summary judgment disposition is particularly inappropriate (*State National Bank v. Kewanee National Bank* (1973), 16 Ill. App. 3d 272, 305 N.E.2d 732), we find that the facts presented in this case fall precisely within this rule.

Finally, we consider defendants' argument that the Cvengros counter affidavit, filed by Ainsworth in response to Cenco's motion for summary judgment on the day of the hearing on the motion, was not timely filed and did not create any contested fact issue to defeat summary judgment.

Although we have previously addressed the latter issue, in order to guide the trial court we note that in accordance with section 57 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 57) the opposite party may prior to or at the time of the hearing on the motion for summary judgment file a counteraffidavit.

■■ While we do not advocate plaintiff's delay in filing, we specifically find that the Cvengros counteraffidavit was timely filed and may be considered by the trial court on remand.

For the foregoing reasons the order of the circuit court of Cook County is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

SULLIVAN, P. J., and MEJDA, J., concur.