**CALIBER PARTNERS, LTD. and Stratford Energy Investments-Ohio Shallow, Plaintiffs,**

v.

**Marvin E. AFFELD and Mary T. Affeld, individually and d/b/a Affeld Oil Company, Defendants.**

**No. 83 C 6968.**

United States District Court, N.D. Illinois, E.D.

April 4, 1984.

Barry Yavitz, Cushner & Yavitz, Chicago, Ill., for plaintiffs.

Bruce S. Sperling, Mitchell H. Macknin, Sperling, Slaten & Spitz, P.C., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Illinois limited partnerships Caliber Partners, Ltd. ("Caliber") and Stratford Energy Investments-Ohio Shallow ("Stratford") sue Marvin Affeld ("Affeld") and Mary Affeld individually and d/b/a Affeld Oil Company (collectively "Affelds") in a ten-count Complaint alleging:

1. federal statutory violations by Affelds involving:

(a) Securities Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j ("Section 10(b)") and related SEC Rule 10b–5 (Count One);

(b) Securities Act of 1933 ("1933 Act") §§ 12(2) and 17(a), 15 U.S.C. §§ 77$l$ and 77q ("Section 12(2)" and "Section 17(a)") (Count Two); and

(c) the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1964(c) (Count Three); and

2. state statutory and common law violations by Affelds involving:

(a) the Illinois Securities Law, Ill. Rev.Stat. ch. 121½, §§ 137.12, 137.13 (Count Four);

(b) Ohio Securities Act §§ 1707.41, 1707.44 (Count Five);

(c) the Illinois Consumer Fraud and Deceptive Business Practice Act, Ill. Rev.Stat. ch. 121½, § 262 (Count Ten);

(d) common law fraud (Count Six);

(e) negligence (Count Seven); and

(f) breach of contract (Counts Eight and Nine).

Affelds now move to dismiss under Fed.R. Civ.P. ("Rule") 12(b)(1) and 12(b)(6). For the reasons stated in this memorandum opinion and order, their motion is granted.

### Facts [1]

In the spring of 1981 Caliber (acting on behalf of itself and Stratford) conferred with Affeld to obtain information about investing in oil and gas leases on property located in Morrow County, Ohio. Affeld represented (1) he had many years' experience in oil drilling and exploration and (2) he was willing to sell shares in three oil and gas leases on which he was preparing to begin drilling operations. Affeld agreed to sell Caliber a 1/16 interest and Stratford a 6/16 interest in the three leases upon payment of $76,250 for the aggregate 7/16 interest in each lease. Contracts were signed by Caliber [2] and Affeld contemporaneously with Caliber's payment of those amounts, and upon completion of two of the wells (the third having been abandoned) Caliber paid the added completion costs of $52,500 for each as the contracts required. Caliber's total investment was $18,750, while Stratford's was $315,000.[3]

According to Complaint ¶ 18 Affeld knowingly made the following material misrepresentations or omissions:

(a) About spring 1981, and on several occasions thereafter, Affeld stated that he could contribute or had already contributed a share of the capital cost of drilling and completing each well which was roughly equivalent to the sum invested in each well by the investors;

(b) About spring 1981, and on several occasions thereafter, Affeld furnished the investors group, through Caliber, materially incomplete or false information concerning the wells, including, but noted [sic] limited to actual costs of drilling, completing and operating each well, costs of material used, reasons for additional costs, and delays in completion of each well;

(c) About spring 1981, and on several occasions thereafter, Affeld stated each well would produce substantial quantities of oil, the royalty payments for which would be far in excess of operating costs of each well, and that there was little risk of failure in these ventures. Affeld told Caliber he had been "saving these leases for my retirement" and that they were certain to produce significant quantities of oil;

(d) Affeld told Caliber, about spring 1981, and various times thereafter, that each well would be located above the Trempealeau formation, a geological structure which had a history of oil and gas deposits, and that each well was certain to tap oil and gas from this area, since highly successful wells previously had been drilled on certain of the leaseholds and on adjoining areas.

(e) About spring 1981, and numerous times thereafter, Affeld failed to disclose to the investors, through Caliber, material information on the general and specific

---

**1.** As always on a motion to dismiss, all well-pleaded allegations of the Complaint are taken as true, with all reasonable factual inferences drawn in plaintiffs' favor. *Mathers Fund, Inc. v. Colwell Co.,* 564 F.2d 780, 781 (7th Cir.1977). In this instance the term "well-pleaded" begs the question somewhat, for Affelds challenge the operative allegations as insufficient in that sense. In the interests of full disclosure (to avoid the Court's own possible Rule 10b-5 viola-

tion), this section will simply quote the critical allegations of Complaint ¶ 18 verbatim.

**2.** Stratford executed an agreement designating Caliber as its nominee in these transactions.

**3.** None of the numbers in this paragraph jibes at all with the contracts attached as Complaint Exhibits A, B and C, but the current pleading motion is not the occasion to address that issue.

risks incumbent in oil and gas investments, including, but not limited to, the limited marketability of oil and gas working interest investments, conflicts of interest and self dealing by Affeld in connection with drilling each well; the speculative nature of the investment; the risk that costs of operation would exceed income from each well; the risk of loss of equipment during drilling; the effect inclement weather created on drilling, completion and operation of each well; estimates on the amount of commercially marketable oil capable of being withdrawn from each well; and the amount of oil withdrawn from each well;

(f) About spring 1981, and numerous times thereafter, Affeld failed to disclose that significant amounts of money obtained from the plaintiffs were paid to him and his company for services and materials used in connection with drilling each well.

Plaintiffs relied on those representations in making the investments (Complaint ¶ 20).

### Rule 9(b) Requirements

As to the federal securities fraud claims (under Sections 10(b) and 17(a)), Affelds say plaintiffs have not alleged fraud with the requisite particularity. Affelds attack plaintiffs' failure to particularize the time and place of the misrepresentations, why the statements were false and misleading or the facts underlying Affeld's knowledge those statements were false when he made them.

■ In those respects Affelds misconceive the purpose and effect of Rule 9(b):

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

To plead a cause of action for fraud, plaintiffs need not allege evidentiary details

that will be used to support the claim at a later date. *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir.1974); 2A Moore, *Moore's Federal Practice* ¶ 9.03, at 9–28 to 9–30 and nn. 13–14. They need only set forth the basic outline of the scheme, who made what misrepresentations and the general time and place of such misrepresentations. *Darling & Co. v. Klouman*, 87 F.R.D. 756, 757–58 (N.D.Ill. 1980) and cases there cited. Here Affelds have been given sufficient notice of those matters, who made the representations and the general time period in which they were made.[4]

■ Affelds are also wrong in urging Rule 9(b) requires plaintiffs to allege facts showing Affeld knew he was misleading them. Instead Rule 9(b) specifically permits general allegations of knowledge and intent. To require a plaintiff to plead such matters, which are peculiarly within a defendant's knowledge, would impose an impermissible burden. 2A Moore ¶ 9.03, at 9–36 to 9–38 and nn. 25–28; compare the "clear weight of authority" as exemplified by *McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228 (1st Cir.1980) with the solitary viewpoint expressed in *Ross v. A.H. Robins Co.*, 607 F.2d 545, 558 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980).

■ Affelds also contend plaintiffs cannot ground an action on promises contrary to the contract terms, in contravention of the contract integration clause. *Katz v. Diabetes Association of Greater Chicago*, 31 Ill.App.3d 240, 243, 333 N.E.2d 293, 295 (1st Dist.1975). That argument misses the mark as applied to the Complaint's fraud counts.[5] Plaintiffs are there suing for fraud in the inducement of a contract, not to enforce the contract terms. Allegations of representations contrary to the contract terms are properly considered to determine whether Affeld fraudulently induced Caliber and Stratford to enter into these con-

---

**4.** Between "spring 1981" and July 29, 1981, the date the contracts were entered into, is at most four months.

**5.** This Court makes no comment as to Affeld's assertion as applied to Counts Eight and Nine.

tracts.[6] See *Ainsworth Corp. v. Cenco, Inc.,* 107 Ill.App.3d 435, 439, 63 Ill.Dec. 168, 172, 437 N.E.2d 817, 821 (1st Dist. 1982).

■ Nonetheless Count One and the Section 17(a) claim in Count Two must be stricken. By their very nature a number of the alleged misrepresentations and material omissions recited in Complaint ¶ 18 plainly appear to have been post- rather than pre-contract-signing.[7] As such they cannot underpin a fraud-in-the-inducement claim. Affelds cannot fairly be required to parse the Complaint to pick out the allegations that do and do not form part of the cause of action. They are entitled to a more craftsmanlike pleading to which they can prepare an informed answer.

### Count Two

Affelds make two separate attacks on Count Two:

1. Plaintiffs have not affirmatively pleaded compliance with the one-year statute of limitations applied to Section 12(2) violations.

2. No private right of action exists under Section 17(a).

Their first onslaught is successful, and their second need not be confronted at this time.

■ As to the first point, Affelds are correct: Plaintiffs must affirmatively allege compliance with the one-year statute of limitations contained in 1933 Act § 13, 15 U.S.C. § 77n:

No action shall be maintained to enforce any liability created under section 77k or 77*l* (2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 77*l* (1) of this title, unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 77k or 77*l* (1) of this title more than three years after the security was bona fide offered to the public, or under section 77*l* (2) of this title more than three years after the sale.

*Adair v. Hunt International Resources Corp.,* 526 F.Supp. 736, 748–49 (N.D.Ill. 1981). Complaint ¶ 21's allegations [8] do not at all begin to meet that requirement (and it is of course premature to predict whether any effort to amend would be successful in overcoming the limitations problems posed—at least facially—by the timing outlined in the Complaint). Plaintiff's Section 12(2) claim is also dismissed.

As to the second point, the Courts of Appeals are sharply divided as to whether a private right of action exists under Section 17(a) [9] and the Supreme Court has not yet decided the issue.[10] Most recently our Court of Appeals has characterized the matter as "an open question in this circuit." *Peoria Union Stock Yards Co. v. Penn Mutual Life Insurance Co.,* 698 F.2d

---

**6.** Of course such inconsistency may bear on plaintiffs' alleged reliance on such representations, or on the reasonableness of any such reliance. But those questions too are for consideration in the future, not on a Rule 12(b)(6) motion.

**7.** Affelds are likely correct that plaintiffs' repeated use of locutions such as "About spring 1981, and on several occasions thereafter" was intended to gloss over that problem and the limitations question under Section 12(2).

**8.** Complaint ¶ 21 reads:

Each plaintiff was completely unaware of the falsity or misleading nature of the statements

or omissions as set forth above in Paragraph 18 and of the fact that each security was unregistered, until approximately 1982.

**9.** Compare *Keys v. Wolfe,* 709 F.2d 413, 416 (5th Cir.1983), *Landry v. All American Assurance Co.,* 688 F.2d 381, 384–91 (5th Cir.1982) and *Shull v. Dain, Kalman & Quail, Inc.,* 561 F.2d 152, 159 (8th Cir.1977) (holding no private right of action) with *Stephanson v. Calpine Conifers II, Ltd.,* 652 F.2d 808, 815 (9th Cir.1981) and *Kirshner v. United States,* 603 F.2d 234, 241 (2d Cir. 1978) (holding such a right exists).

**10.** See *Aaron v. SEC,* 446 U.S. 680, 689, 100 S.Ct. 1945, 1951, 64 L.Ed.2d 611 (1980).

320, 323 (7th Cir.1983).[11] This Court will take a leaf from the Court of Appeals' book in *Peoria Union Stock Yards* and treat the Section 17(a) issue as irrelevant—that is, not necessary for decision—unless a substantive distinction between Rule 10b-5 and Section 17(a) develops. This Court therefore defers any current decision as to the independent viability of a Section 17(a) claim.[12]

### Count Three

■ Affelds contend plaintiffs' RICO count does not allege how Affeld used the mails or wire communications in furtherance of the scheme to defraud. As with all challenges based on the sufficiency of complaints, this Court applies the liberal notice-pleading concepts of *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Nevertheless it will not do for plaintiffs simply to assert Affeld used the mails or wires "in connection with his business enterprise." For aught that appears, there was no causal nexus between that conduct (the asserted "pattern of racketeering activity") and the alleged damage to plaintiffs.[13] Though this defect may be readily curable (if the facts justify such a curative

pleading), as presently drafted Count Three must fail as well.

### Pendent State Law Claims

■ Finally Affelds urge plaintiffs, as Illinois limited partnerships, have no capacity to bring any of their state law claims [14] under Rule 17(b):

> In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States....

As the Rule reflects, plaintiffs may sue in their common names to enforce their *federal* claims, but their capacity to bring *state* law claims depends on Illinois law.

Illinois applies wholly different rules as to the capacity of a partnership to *sue* and to *be sued* in its firm name. By statute (Ill.Rev.Stat. ch. 110, ¶ 2–411) the latter has been made permissible, while the common-law disability still precludes the former (29 I.L.P. *Partnership* § 172, at 371).[15] Ac-

---

**11.** But see the Court's earlier square holdings upholding private Section 17(a) claims in *Schaefer v. First National Bank of Lincolnwood*, 509 F.2d 1287, 1293 (7th Cir.1975) and *Daniel v. International Brotherhood of Teamsters*, 561 F.2d 1223, 1244–46 (7th Cir.1977), *rev'd on other grounds*, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1979). At the District Court level, see, e.g., *Frischling v. Priest Oil and Gas Corp.*, 524 F.Supp. 1107, 1110 (N.D.Ill.1981).

**12.** Since *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), implied private causes of action have become increasingly unfashionable in the Supreme Court. See the discussion by Justice Stevens, concurring in part and dissenting in part, in *Middlesex County Sewer Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 24–26, 101 S.Ct. 2615, 2628–29, 69 L.Ed.2d 435 (1981). And Section 17(a), wholly unlike Rule 10b–5, does not have a long history that places the "existence of this implied remedy ... simply beyond peradventure." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 103 S.Ct. 683, 687, 74 L.Ed.2d 548 (1983). Given the current trend of affairs and the way the cases have been lining up, there is then a serious question whether

Judge Posner can be accurate (in *Peoria Union Stock Yards*, 698 F.2d at 323) in labeling as the current "majority view" the older cases upholding a private cause of action under Section 17(a).

**13.** See *Bache Halsey Stuart Shields, Inc. v. Tracy Collins Bank & Trust Co.*, 558 F.Supp. 1042, 1045–47 (D.Utah 1983). To require such a showing does not conflict with *Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272, 1289 (7th Cir.1983), where the court held an allegation the enterprise affects interstate commerce is sufficient under notice pleading to allege the requisite nexus with such commerce.

**14.** Initially Affelds assert a total absence of pendent jurisdiction due to the failure of all the federal claims. Because one or more of the federal claims is likely to be revived, this opinion goes on to the more basic problem discussed in the text.

**15.** Under the language of Rule 17(b) that disability also extends to Count Five (the alleged violation of the Ohio securities laws).

cordingly all the pendent state law claims (Counts Five through Ten) are also dismissed.[16]

### Conclusion

Affelds' motion to dismiss the Complaint is granted in its entirety. If an Amended Complaint is filed on or before April 20, 1984, Affelds shall answer or otherwise plead to that Amended Complaint on or before May 6, 1984. If no Amended Complaint is so filed, this action shall be dismissed April 30, 1984.

**16.** Plaintiffs' argument that "pendent capacity" is available to save the state law claims is not supported by the case they cite, *Feldberg v. O'Connell,* 338 F.Supp. 744 (D.Mass.1972). There the motion to dismiss the state law claim was based solely on the lack of pendent jurisdiction if the federal claim were dismissed.