James A. PECK and Sara K. Peck,
Plaintiffs-Respondents,

v.

David P. JADWIN and Linda S. Jadwin, Defendants-Appellants.

No. 13861.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 10, 1986.

Gary W. Allman, Cantwell, Allman & Smith, Branson, for defendants-appellants.

John E. Price, James R. Cox, Woolsey, Fisher, Whiteaker, McDonald & Ansley, Springfield, for plaintiffs-respondents.

FLANIGAN, Judge.

Plaintiffs James A. Peck and Sara K. Peck, husband and wife, brought this action against defendants David P. Jadwin and Linda A. Jadwin, husband and wife, and other defendants. The petition contained seven counts and each count requested relief from defendants Jadwin. Prior to submitting the case to the jury, plaintiffs dismissed their claims against the other defendants and submitted, against defendants Jadwin, only the claim contained in Count 7.

Count 7 alleged that on October 23, 1978, defendants Jadwin executed a promissory note in the amount of $25,000 in favor of the plaintiffs; that under the terms of the note the principal became payable on March 2, 1979, and that the defendants had failed to make payment; that the note provided for interest from maturity at the rate of eight percent per annum and for the payment of all costs of collection, including a reasonable attorney's fee, if not paid at maturity. The prayer of Count 7 was for the sum of $25,000, together with interest and a reasonable attorney's fee.

Defendants Jadwins' answer to Count 7 admitted execution of the note and further alleged that defendants "have paid to the plaintiffs the sum stated in said note for the reason that plaintiffs are indebted to the defendants in an amount in excess of $25,000 by setoff, credits, payments, and other amounts due." The jury returned a

verdict in favor of the plaintiffs in the amount of $38,150, on which judgment was entered. Defendants Jadwin appeal.

The giving of the note mentioned in Count 7 was only one of a series of dealings between the Pecks and the Jadwins during 1978 which arose out of the purchase by the Pecks, from the Jadwins, of a lake shore resort on Table Rock Lake known as Wilderness Point Resort. The purchase was made on March 11, 1978, by execution of a "contract for deed," accompanied by a general warranty deed and a bill of sale. Those documents, collectively, will be referred to as "the March agreement."

Under the March agreement the Pecks agreed to pay the Jadwins a purchase price of $595,000, in installments, some of which were devoted to the payment of two mortgages. The Pecks were to receive the deed and the bill of sale from the escrow holder upon full performance. The Pecks were to have immediate possession.

The Pecks entered into possession in March and operated the resort, without financial success, until late September. On October 23, 1978, the Pecks and the Jadwins entered into another written contract, pursuant to which the Jadwins delivered the note. This contract will be referred to as "the October agreement."

Under the October agreement, the March agreement was "hereby canceled and for naught held"; the Pecks "relinquish[ed] all real property and personal property described in [the March agreement] to the Jadwins"; the deed and bill of sale were to be returned to the Jadwins by the escrow holder; the Pecks agreed to hold the Jadwins harmless from all debts arising out of the operation of Wilderness Point Resort between March 11, 1978, and October 23, 1978; the Jadwins agreed to pay the Pecks $25,000, evidenced by the note.

Defendants Jadwins' first point is that the trial court erred "in not granting, prior to presentment of evidence to the jury, defendants' motion to require plaintiffs to elect between two mutually exclusive causes of action, one lying in fraud in the inducement of [the March agreement] and the second lying in damages for breach of [the October agreement] because plaintiffs, prior to trial, had consummated for consideration a termination of [the March agreement], cancelling same, and were thereby estopped from raising any claim of fraud and had waived said cause of action; and [the trial court] improperly allowed plaintiffs to present evidence of fraud and misrepresentation on [the March agreement] which was wholly unrelated to any issue in dispute relative to [the October agreement] and was highly prejudicial to defendants."

Originally named as co-defendants with the Jadwins were the real estate agents who represented the Jadwins in connection with the sale embodied in the March agreement. Counts 1, 2, 3 and 4 of the petition were against the Jadwins and the real estate agents. Counts 5, 6 and 7 were against the Jadwins only.

Counts 1, 2, 3 and 4, all based on the March agreement, contained the following claims and prayers: Count 1 (rescission; actual damages); Count 2 (fraud; punitive damages); Count 3 (negligent misrepresentations; actual damages); Count 4 (negligent misrepresentations; punitive damages). Counts 5, 6 and 7, all based on the October agreement, contained the following claims and prayers: Count 5 (specific performance); Count 6 (breach of contract; actual damages); Count 7 (suit on note; actual damages).

On the morning of the trial, and prior to its commencement, defendants Jadwin filed a "Motion to Require Plaintiffs to Elect Remedies." Although defendants' brief candidly admits that the motion was not carefully drafted, it may be charitably construed as a request for an order requiring the plaintiffs to make an election between Counts 1, 2, 3 and 4 (and especially Count 2) on the one hand, and Counts 5, 6 and 7 on the other hand. Defendants' argument, in essence, is that plaintiffs should not have been permitted to introduce evidence that they were induced to enter into the March agreement by fraudulent representations made to them by the defendants

(speaking through the real estate agents) because the claim for fraud was waived by the conduct of the plaintiffs in entering into the October agreement. There is no merit in this contention.

■ When defendants presented their motion to the court they offered no evidence in support of it. A motion does not prove itself and the burden is on the movant to prove its allegations. *Taylor v. Coe,* 675 S.W.2d 148, 150[3] (Mo.App.1984). Defendants' motion was well taken only if the petition, on its face, so demonstrated.

■ Under Missouri procedure a party may state in his pleadings as many separate claims or defenses as he has, "regardless of consistency and whether based on legal or equitable grounds." Rule 55.10, V.A.M.R.

> "[W]here a party entitled to recover for fraud and deceit *has knowledge of the fraud and deceit* in the original contract and *thereafter* makes a new agreement, the case law seems to preclude a recovery for the fraud and deceit tincturing the original contract." (Emphasis added.)

*Brown v. South Joplin Lead & Zinc Mining Co.,* 231 Mo. 166, 132 S.W. 693, 694 (1910).

At p. 695 the court said:

> "This doctrine of waiving the right to sue for fraud and deceit by entering into a new agreement concerning the same subject-matter may well be sustained on the theory that all such questions were considered by the parties in making the new agreement. *If at the time the parties entered into the new agreement the facts as to the fraud and deceit were known,* it is to be presumed that both parties acted with that question in view, and the new agreement was the wiping out of all old scores." (Emphasis added.)

In *Anselmo v. Manufacturers Life Ins. Co.,* 771 F.2d 417 (8th Cir.1985), the court said, at 421:

> "The authorities are unanimous in holding that where one has been induced by fraud to enter into a contract and, *after discovery of the fraud,* enters into an agreement concerning the subject matter of the contract, * * * he is conclusively deemed to have waived any claim for damages on account of fraud." (Emphasis added.)

To similar effect see *Bissett v. Ply-Gem Industries, Inc.,* 533 F.2d 142 (5th Cir. 1976); *Ainsworth Corp. v. Cenco Inc.,* 107 Ill.App.3d 435, 63 Ill.Dec. 168, 172, 437 N.E.2d 817, 821[8] (1982); 37 Am.Jur.2d Fraud and Deceit § 397, p. 541; 37 C.J.S. Fraud § 69, p. 364.

The foregoing rule does not operate unless the defrauded party, at the time of making the second agreement, had knowledge of the fraud which induced his entry into the first agreement.

In *Bissett,* at p. 151, the court said:

> "Our attention is drawn to a number of Florida cases which have found a waiver when the allegedly defrauded party has entered into a new agreement respecting the subject matter of the prior alleged fraudulent transaction. See, e.g., *Storrs v. Storrs,* 130 Fla. 711, 178 So. 841 (1937). However, these cases make it clear that waiver will be found only if the latter agreement was made with actual or imputed knowledge of the facts constituting the alleged fraud."

In *Ainsworth* the court said, at p. 821:

> "Generally, a party who was fraudulently induced to enter into a contract for the acquisition of property, but who later receives some substantial concession from, or enters into a new contract with the party guilty of fraud, with knowledge of the prior deception, thereby relinquishes all right to recover damages because of the misrepresentations. However, the question of whether a settlement of a claim for fraud has been effected as a part of a subsequent transaction between the parties is a question of fact. See 37 Am.Jur.2d Fraud & Deceit § 397 (1968).

> As the court in *Shanahan v. Schindler* (1978), 63 Ill.App.3d 82, 94, 20 Ill. Dec. 239, 379 N.E.2d 1307, succinctly

stated: 'It is true that one may waive a defense of fraud by entering a new contract; however, *knowledge of the fraud at the time of signing the [second contract] is a prerequisite to such waiver.* [Citations.] . . .'" (Emphasis in original.)

Although the petition did not so allege, the fact is that at the time plaintiffs entered into the October agreement, plaintiff James Peck had knowledge of the fraud which induced him and his wife to enter into the March agreement. Such was his trial testimony. Thus the October agreement did have the legal effect of eliminating the cause of action set forth in Count 2, at least if Mrs. Peck also had knowledge. However, that testimony was not adduced until after defendants' motion to elect had been presented and ruled.

It should be noted that when the case was submitted to the jury on Count 7, the court gave this instruction to the jury: "The issue of fraud or misrepresentation of the defendants David Jadwin and Linda Jadwin is withdrawn from the case and you are not to consider such evidence in arriving at your verdict."

Defendants' first point claims that the trial court erred in not granting defendants' motion to elect "prior to presentment of evidence to the jury." Defendants did not, "prior to presentment of evidence to the jury," make a showing to the court that plaintiffs had "knowledge of the fraud and deceit in the original contract," *Brown v. South Joplin Lead & Zinc Mining Co.,* supra, at the time they entered into the October agreement. Defendants' first point has no merit.

Defendants' second point is that the trial court erred in refusing to give Instruction D offered by defendants. The point sets forth various reasons why Instruction D should have been given. Defendants' second point has not been preserved for appellate review. "If a point relates to the giving, refusal or modification of an instruction such instruction shall be set forth in full in the argument portion of the brief." Rule 84.04(e), V.A.M.R. Instruc-

tion D is not set forth in full in the argument portion or in any other portion of defendants' brief. A gratuitous examination of Instruction D in light of the record discloses no prejudicial error. Defendants' second point has no merit. *Sewell v. MFA Mut. Ins. Co.,* 597 S.W.2d 284, 290[4] (Mo. App.1980).

The judgment is affirmed.

TITUS, P.J., and GREENE, J., concur.