AINSWORTH CORPORATION, Plaintiff-Appellant, v. CENCO INCORPORATED *et al.*, Defendants-Appellees.

First District (5th Division)  No. 85—2091

Opinion filed March 31, 1987.—Modified on denial of rehearing August 7, 1987.

William J. Harte, Ltd., of Chicago (William J. Harte and Pamela S. Menaker, of counsel), for appellant.

Bruce A. Featherstone and Mark S. Lillie, both of Kirkland & Ellis, of Chicago, for appellees.

JUSTICE MURRAY delivered the opinion of the court:

This is the second appeal in a case involving alleged fraud in the inducement of a 1976 asset purchase agreement. The agreement concerned the transfer of several medical products companies and was between plaintiff Ainsworth Corporation, as buyer, and defendants Cenco Incorporated and Sherwood T. Irvin, as sellers.

In the original appeal which involved a fraud in the inducement claim (*Ainsworth Corp. v. Cenco, Inc.* (1982), 107 Ill. App. 3d 435, 437 N.E.2d 817), this court reversed a trial court's order granting sum-

mary judgment to defendants and remanded the cause for further proceedings. In its original opinion, this court found that there were factual issues as to whether the alleged fraud claim had been waived by a subsequent settlement agreement between the parties in 1977 and whether a release in the settlement agreement was limited to contractual claims concerning an inventory shortfall.

On remand, plaintiff filed an amended complaint, adding counts for breach of contract and breach of warranty to the original count for fraudulent misrepresentation. In November 1983, the trial court granted defendants' motion for summary judgment on the contract and warranty counts based on the 1977 release. Defendants answered the fraud count, asserting various affirmative defenses to which plaintiff replied, and alleged a setoff based on a June 2, 1978, judgment obtained against plaintiff in the amount of $478,634.70.

A four-day trial on the common law fraud issue commenced on April 3, 1985. At the close of plaintiff's case, the trial court granted defendants' motion for a directed verdict and dismissed the cause for failure to prove fraud. Plaintiff's post-trial motions were denied and this appeal followed. The facts underlying this dispute are as follows.

Prior to June 1976, defendant Cenco offered several companies for sale, including Eisele & Company, Inc., of Nashville, a wholly owned subsidiary of Cenco, H. Wills Company of Chicago, and Lukens Suture Company (Lukens) of St. Louis, all of which were divisions of Cenco Medical Industries, Inc. (CMI), a wholly owned subsidiary of Cenco. These companies were engaged in the manufacture and sale of medical sutures and related hospital and medical products. This cause of action relates only to representations concerning the Lukens division. Lukens manufactured and sold surgical sutures, bone wax, and cultural media. Its medical products were regulated by the Food and Drug Administration (FDA) under the Pure Food, Drug and Cosmetics Act (21 U.S.C. ch. 9, secs. 301 et seq. (1970)). The Act requires that certain medical products be labelled as sterile under standards delineated by the United States Pharmacopeia. 21 C.F.R. secs. 130 through 146(3) (1970).

On June 25, 1976, after substantial negotiations, an asset purchase agreement involving the assets and inventory of the Lukens, H. Wills, and Eisele companies was entered into between plaintiff and defendants. Ainsworth was incorporated for the purpose of acquiring these assets by Joseph M. Cvengros, president of Ainsworth. The sellers were represented by defendant Sherwood T. Irvin, who was vice-president of Cenco, president of CMI, and chairman of the board of Eisele. All parties were represented by counsel during negotiations

and formalities surrounding the sale.

Paragraph 7 of the purchase agreement, entitled "Representations and Warranties of Sellers and CENCO," provided in part: "to the best of Sellers' knowledge none of the properties owned, occupied or operated by any of them, nor the ownership, occupancy or operation thereof, is, to any extent materially and adversely affecting the business of any of them, in violation of any law, ordinance or regulation or *** federal, state and local safety laws, regulations and ordinances (including *** the United States Pure Food and Drug Act, or similar laws and regulations ***.) No notice from any governmental body or other person has been served upon Sellers *** claiming any violation of any such law, ordinance, regulation, agreement or code *** which has not been complied with ***."

Consideration for this agreement included payment of $487 at closing, the issuance of a $200,000 note payable by plaintiff one year later, and $435,000 of Ainsworth preferred stock which was convertible into a debt instrument if Ainsworth failed to pay dividends and make redemptions as provided for in the agreement. Plaintiff never paid off the note nor did it pay any dividends or retire the preferred stock.

At the closing, defendant Irvin, at Cvengros' request, signed certificates attesting to the truth of the representations and warranties contained in the purchase agreement. Shortly after the closing, a dispute between the parties arose concerning inventory shortages in the companies now owned by Ainsworth. On January 27, 1977, a letter settlement agreement was reached "in order to resolve the existing dispute between us." Paragraph 6 of the settlement agreement stated that "Ainsworth and Cvengros agree that the representations, warranties and covenants of CMI, Eisele and Cenco in the Agreement shall all expire on the date of this agreement and Ainsworth and Cvengros waive any breach of any of such representations, warranties and covenants, or any default under the Agreement which may have occurred prior to the date of this agreement." In the settlement agreement, Cenco also gave substantial financial concessions with respect to plaintiff's payment obligations.

Four months later, in April 1977, the FDA inspected the Lukens plant and found that its manufacturing processes violated Federal regulations. After several more FDA investigations, it was determined that Lukens was manufacturing nonsterile suture products. Eventually, Lukens was forced to recall all surgical sutures manufactured between January 1, 1976, and August 1977, the date of recall. Thereafter, Lukens did not operate for the next six months.

Ainsworth defaulted on the payment schedule set out in the settlement agreement and Cenco obtained a judgment against it, whereupon plaintiff filed the original fraud in the inducement action.

In the present appeal, plaintiff contends that it met its burden of proof in establishing a *prima facie* case of fraud, thereby rendering the directed verdict as being against the manifest weight of the evidence. Plaintiff also argues that it was prejudiced by improper evidentiary rulings and by a pretrial order that prevented plaintiff from deposing a crucial witness. Lastly, plaintiff challenges the appropriateness of the summary judgment as to the breach of contract and warranty counts on the ground that material issues of fact were raised.

We will first discuss the evidentiary objections because of the possibility that improper rulings could have affected plaintiff's ability to meet its burden of proof.

Plaintiff contends that the trial court's denial of its emergency pretrial motion to take an evidence deposition of a crucial, disclosed out-of-State witness was an abuse of discretion. In its motion, filed one week before the cause was set for trial, plaintiff asserted that, contrary to repeated past assurances from Dr. Isaac Baarda that he would appear for trial, it had been informed that Baarda would be unable to come to Chicago from his home in Tennessee because his wife was recovering from recent surgery. Dr. Baarda was the Lukens plant manager who was in charge of quality control under defendants' ownership. He was in charge of quality control for all three plants under plaintiff's ownership. Furthermore, he was the main respondent to plaintiff's inquiries concerning sterilization and compliance with government regulations prior to plaintiff's purchase of the companies.

Plaintiff's motion stated that Dr. Baarda would cooperate with the taking of an evidence deposition, provided that any attempt to compel his appearance by subpoena from a Nashville court be coordinated with defendants' attorneys. Plaintiff's attorneys immediately contacted defendants' attorneys to inform them of Baarda's nonappearance and tried to accommodate the defense in the scheduling of the deposition in the week preceding trial. However, defendants objected to the emergency motion for several reasons: (1) plaintiff's failure to make an offer of proof precludes appellate review of this issue; (2) the trial court had already set a firm trial date of April 1, 1985, with no further continuance, there having been at least nine continuances before the motion; (3) since the delay in deposing Baarda was plaintiff's fault, the trial court had discretion to deny the motion in order to prevent interruption of defendants' trial preparation necessitated by at-

tendance at an out-of-State deposition; and (4) the proposed deposition violated circuit court Rule 3.3 in that it was made after the discovery cut-off date and did not present any extraordinary circumstances. Defendants additionally alleged that Baarda advised them that he had never intended to appear at trial.

Neither party attached affidavits to support their contentions as to Baarda's original intent to testify. After denial of plaintiff's motion, the trial court on March 29 granted defendants a one-day continuance of the trial date in order to depose an FDA inspector in St. Louis on April 1. The FDA had originally refused to produce the inspector for deposing but reversed its position when it learned that the originals of certain documents prepared by the inspector had been lost.

■ It is the rule that a reviewing court will not interfere with a trial court's ruling on discovery matters unless there is a manifest abuse of discretion. (*Williamson v. Doyle* (1983), 112 Ill. App. 3d 293, 301, 445 N.E.2d 385.) However, in this case, such an abuse of discretion has occurred for the following reasons.

■■ ■ The purpose of discovery is to facilitate a discovery of the facts and an application of the law so that justice results. (*Tansey v. Robinson* (1960), 24 Ill. App. 2d 227, 235, 164 N.E.2d 272.) The underlying reason for the liberalization of modern discovery rules is "to replace the traditional 'combat' theory of litigation with the more equitable principle that litigation should be a joint search for the truth." (*Payne v. Coates-Miller, Inc.* (1979), 68 Ill. App. 3d 601, 606, 386 N.E.2d 398, 402.) Accordingly, the right of any party to a discovery deposition is basic and fundamental, and such right imposes a duty on the other party which cannot be avoided by technical maneuvers. *Slatten v. City of Chicago* (1973), 12 Ill. App. 3d 808, 813, 299 N.E.2d 442.

■ Although not specific, the trial court's order denying plaintiff's emergency motion appears to be based on the fact that the trial date was set for one week later and would not be continued. This situation arose in *Liberty Mutual Insurance Co. v. Congress Michigan Auto Park, Inc.* (1958), 19 Ill. App. 2d 502, 154 N.E.2d 298, wherein the trial court's refusal to allow an out-of-State witness to be deposed one month before trial was reversed. The *Liberty Mutual* court noted that, as in our case, the plaintiff had assured the court that trial would not be delayed by the taking of the deposition. (19 Ill. App. 2d 502, 506, 154 N.E.2d 298.) The court also stated that Illinois practice does not require the attachment of an affidavit to the notice of deposition nor need there be a showing under oath that the witness' testimony is material and necessary in the trial. (19 Ill. App. 2d 502, 507,

154 N.E.2d 298.) Thus, defendants' assertion in the present case that an offer of proof was necessary is illogical. There can be no offer of proof concerning an evidence deposition before the testimony is given. Just as no affidavit is required for the taking of an evidence deposition, an offer of proof is also not necessary.

Defendants' argument that the emergency motion was properly denied is partially based on Rule 3.3 of the circuit court of Cook County which provides in part: "Except as hereinafter provided, *** discovery in civil actions at law shall be concluded within 24 months after the case is filed. *** After such 24-month cut-off date, no demand for discovery shall be recognized except for that specifically approved by such order, or upon a showing of extraordinary circumstances." Cook County circuit court R. 3.3(a).

■ Under the circumstances of this case, defendants' argument could be considered just such a technical maneuver disapproved of by the court in *Slatten v. City of Chicago* (1973), 12 Ill. App. 3d 808, 813, 299 N.E.2d 442. Plaintiff's emergency motion requested that it be allowed to take an evidence deposition of Dr. Baarda. Illinois is unique in that it distinguishes between discovery depositions and evidence depositions; that difference is significant in that discovery depositions are primarily used to obtain information, to commit witnesses to particular stories, and to obtain admissions, whereas evidence depositions are fully admissible as to what an unavailable witness would testify if present in the courtroom. *Slatten v. City of Chicago* (1973), 12 Ill. App. 3d 808, 813, 299 N.E.2d 442, citing E. Cleary, Illinois Evidence sec. 1.5, at 7 (2d ed. 1963).

Although Rule 3.3 refers only to discovery matters, it is appropriate that it be evaluated in tandem with the supreme court rule providing that an evidence deposition may be used when the deponent is out of the county if that absence was not procured by the party offering the deposition. (73 Ill. 2d R. 212(b)(2).) It thus appears that the relevant rule places only two restrictions on the right to take an evidence deposition, *i.e.*, an out-of-county deponent and a good-faith requirement. (Ill. Ann. Stat., ch. 110A, par. 212(b), Historical and Practice Notes, at 302 (Smith-Hurd 1985).) No time limitation is mentioned. There is nothing in the present record to show that Dr. Baarda's nonappearance was procured by plaintiff. Although defendants allege that Baarda told them that he never intended to testify, there is no proof of this claim. And, defendants do not deny that Baarda had agreed to give a deposition in Nashville during the week preceding trial if the parties' attorneys could coordinate arrangements.

Even assuming Rule 3.3 applies to evidence depositions, the rec-

ord supports plaintiff's assertion that "extraordinary circumstances" necessitated deposing Dr. Baarda. The difference between the circumstance of Baarda's last-minute refusal to come to Chicago for trial and the FDA's last-minute decision to allow an inspector to give a deposition is minimal. And yet the trial court granted defendants' motion to take an evidence deposition of the inspector even though the trial date had to be continued one day.

■ The reasoning applied by the court in *Kujala v. Jackson* (1970), 123 Ill. App. 2d 11, 259 N.E.2d 648, is analogous to the present situation. In *Kujala*, the trial court barred a witness from testifying because plaintiff had failed to list the witness in answering an interrogatory. This court reversed and remanded for a new trial, holding that the trial court had abused its discretion. In so doing, the *Kujala* court delineated four factors to be used in determining whether the barring of the witness was an appropriate sanction: (1) surprise to opposing party; (2) good-faith conduct of the party seeking the deposition; (3) an equal opportunity of both parties to depose the witness prior to trial; and (4) the prejudice resulting to the opposing party.

■ In the case at bar, the use of Dr. Baarda as a witness could not have surprised anyone. Furthermore, there is no evidence that plaintiff acted otherwise than in good faith. Counsel for plaintiff had conducted two interviews with Baarda before trial. Up until seven days before trial, plaintiff asserted that it believed Baarda would appear. Moreover, defendants' allegation that plaintiff was at fault in not earlier deposing Dr. Baarda is without merit. "If both discovery and evidence depositions are desired of the same witness they shall be taken separately ***." (73 Ill. 2d R. 202.) Calling to coordinate Baarda's trial appearance, counsel for plaintiff first learned that Baarda would not leave Nashville because of his wife's surgery. Plaintiff's counsel then made a diligent effort to accommodate defense counsel in the scheduling of a deposition. An examination of the record leaves no doubt that Dr. Baarda was a crucial witness. He was in charge of quality control and sterilization procedures under both plaintiff's and defendants' ownership. It is apparent that there was a question as to whether unsterile sutures were manufactured while defendants owned Lukens or only after plaintiff became the owner. Under such circumstances, the refusal to allow the taking of Baarda's evidence deposition resulted in prejudice to the truth-finding process.

It is true that there had been at least nine continuances in this case; however, at the time of plaintiff's emergency motion, the cause had been pending for over seven years. Any inconvenience to defendants' counsel in interrupting their trial preparation for the deposition

must be counterbalanced by the long pretrial preparation period and by plaintiff's assurance that the trial would not be delayed by the deposition, keeping in mind the principle that litigation should be a joint search for the truth. (*Payne v. Coates-Miller, Inc.* (1979), 68 Ill. App. 3d 601, 606, 386 N.E.2d 398.) The issue of undue hardship to a defendant was addressed by the court in *Liberty Mutual Insurance Co. v. Congress Michigan Auto Park, Inc.* (1958), 19 Ill. App. 2d 502, 508, 154 N.E.2d 298, which emphasized a trial court's broad powers concerning the method and time frame for a deposition and the assessment of expenses and attorney fees.

Therefore, for the foregoing reasons and in the interests of justice, we find that the denial of plaintiff's motion to take an evidence deposition of a crucial witness was an abuse of discretion and must be reversed and remanded for a new trial on the fraud count. As a result of our ruling, it is not necessary to address plaintiff's other evidentiary objections.

The next issue involves the propriety of the trial court's disposition of plaintiff's breach of contract and warranty claims by granting summary judgment in defendants' favor. Plaintiff alleges there were issues of material fact raised that precluded summary judgment. Defendants assert that the claims were properly dismissed on the basis of plaintiff's judicial admissions made in 1980 and because of an unambiguous release in the 1977 settlement agreement entered into seven months after the contract was finalized.

■ In determining whether summary judgment should be granted, the court looks to the pleadings, depositions, admissions, and affidavits for the existence of factual issues. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005.) Defendants argue that judicial admissions made by plaintiff's counsel during 1980 hearings on defendants' summary judgment motion in the first *Ainsworth* case (*Ainsworth Corp. v. Cenco, Inc.* (1982), 107 Ill. App. 3d 435, 437 N.E.2d 817) now preclude plaintiff from asserting contract and warranty claims. Plaintiff contends that the statements were merely clarifying statements in response to the trial court's questioning as to what issue was in dispute.

■ Both parties rely on *Precision Extrusions, Inc. v. Stewart* (1962), 36 Ill. App. 2d 30, 183 N.E.2d 547, in which the court held that an amended pleading generally supersedes prior pleadings; thus, admissions in the earlier pleadings become merely nonbinding evidential admissions. The court further distinguished such admissions from judicial admissions which, unless withdrawn by the court's permission, are conclusive. (36 Ill. App. 2d 30, 50-51, 183 N.E.2d 547.) And, statements of fact by a party's attorney at a judicial hearing may be used

as an admission of facts. (*Fair Automotive Repair, Inc. v. Car-X Service Systems, Inc.* (1984), 128 Ill. App. 3d 763, 769, 471 N.E.2d 554.) To defeat recovery, a judicial admission must be deliberate testimony relating to a concrete fact. (*A. H. Sollinger Construction Co. v. Illinois Building Authority* (1972), 5 Ill. App. 3d 554, 562, 283 N.E.2d 508.) However, before a statement can be held to be a judicial admission, it must be given a meaning consistent with the context in which it is found and it must be considered in relation to the other testimony and evidence presented. *Gauchas v. Chicago Transit Authority* (1965), 57 Ill. App. 2d 396, 401, 206 N.E.2d 752.

■■■ We initially note that defendants presented the same judicial admissions argument in its opposition to plaintiff's 1983 motion to amend its complaint. There is no evidence in the record concerning the trial court's consideration of this issue except that mention was made that the parties' briefs were examined in its decision to grant the motion to amend. In examining the record, we also considered the fact that the alleged admission occurred during a colloquy between counsel for plaintiff and the trial court in an apparent attempt to explain the complaint. (See, *e.g., Lawson v. Hill* (1979), 77 Ill. App. 3d 835, 396 N.E.2d 617.) Since the record does not contain the entire transcript of the hearing (only excerpts of the hearing are attached to an affidavit of one of defendants' counsel), there is no way we can examine counsel's statements in the context in which they were made. As a result, the question of whether judicial admissions were made by counsel for plaintiff must be determined by the trial court.

To summarize the relevant portions of the settlement agreement set forth above, the letter agreement begins by stating, "The Agreement also contains various representations and warranties by [Cenco] and [Ainsworth] contend[s] *that certain of these representations and warranties have been breached.* In order to resolve the *existing dispute* between us, we have all agreed to the following ***." (Emphasis added.) Paragraph 6 of the settlement agreement declares that all representations, warranties, and covenants in the purchase agreement expire on the date of the settlement agreement and plaintiff waives any breach thereof occurring prior to the date of the settlement.

Defendants assert that paragraph 6 in the settlement agreement unambiguously waives all contract and warranty claims set forth in the purchase agreement. In the original appeal, this court considered only a fraud claim and reversed the trial court's granting of summary judgment for defendants. (*Ainsworth Corp. v. Cenco, Inc.* (1982), 107 Ill. App. 3d 435, 437 N.E.2d 817.) At that time this court stated that "no form of words, no matter how all encompassing, will foreclose

scrutiny of a release [citation] or prevent a reviewing court from inquiring into surrounding circumstances to ascertain whether it was fairly made and accurately reflected the intention of the parties. [Citation.]" (107 Ill. App. 3d 435, 439, 437 N.E.2d 817, 821.) The court then held that summary judgment was improper since waiver of fraud is a fact issue. 107 Ill. App. 3d 435, 440, 437 N.E.2d 817.

    ■■■ Regardless of the issues addressed in the earlier *Ainsworth* case, these statements concerning the reviewability of a release are still applicable to the case at bar. This court can examine whether the release accurately reflected the intention of the parties since the intent of the parties controls the scope of the release. (*Porter v. Ford Motor Co.* (1983), 96 Ill. 2d 190, 194, 449 N.E.2d 827.) Furthermore, when a written agreement is clear and explicit, it must be enforced as written and the parties' intent must be determined from the face of the document. (*Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 323, 472 N.E.2d 791.) This principle is the basis for defendants' contention that the release operated as a waiver of the contract and warranty claims. However, this contention is based on defendants' assertion that the settlement was unambiguous on its face.

    ■■■ Determination of the existence of ambiguity in a contract is a question of law. (*National Tea Co. v. American National Bank & Trust Co.* (1981), 100 Ill. App. 3d 1046, 1049, 427 N.E.2d 806.) A contract is ambiguous when the language used is reasonably susceptible to more than one meaning. (*W. H. Lyman Construction Co. v. Village of Gurnee* (1985), 131 Ill. App. 3d 87, 96, 475 N.E.2d 273.) Moreover, the intent of the parties must be determined from the contract as a whole and not from any one clause standing alone. *Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 283, 154 N.E.2d 683.

    ■■■ In the present case, the first paragraph of the settlement agreement explicitly states that it was negotiated to settle the existing dispute between the parties and further recites that certain representations and warranties had been breached. Reading the settlement agreement as a whole, it is therefore reasonable to infer, as plaintiff contends, that the waivers in paragraph 6 relate to the then-existing dispute. This inference is reasonable because, at the time of the settlement agreement, plaintiff had no knowledge of the future fraud claim which is the basis for the present breach of contract and warranty counts. It is also the rule in Illinois that when a writing contains recitals of or other reference to specific claims, and also words of general release, the words of general release are limited to the particular claims to which reference is made. (*Gladinus v. Laughlin* (1977), 51 Ill. App. 3d 694, 696, 366 N.E.2d 430.) Thus, the general language of

paragraph 6 should not be construed to bar the current contract and warranty claims where the introductory language of the settlement agreement refers to a specific, then-existent dispute.

Contrary to defendants' assertions, the court in the first *Ainsworth* case did refer to plaintiff's alternative contention to its fraud claim, *i.e.*, the settlement agreement release was a limited release of contractual claims relating to the inventory shortfall. This alternative theory contrasted with defendants' argument that all claims were released by the settlement agreement. The *Ainsworth* court concluded that, independent of the fraud issue, this was an additional reason "to deny the all-inclusive effect of the release in question." (*Ainsworth Corp. v. Cenco, Inc.* (1982), 107 Ill. App. 3d 435, 440-41, 437 N.E.2d 817, 822.) Defendants' reliance on *Porter v. Ford Motor Co.* (1983), 96 Ill. 2d 190, 449 N.E.2d 827, for the proposition that releases can waive future unknown claims is inapplicable here since in *Porter*, the issue was not who was bound by a release, but rather who was released under the common law rule that the release of one joint tortfeasor releases all. See *Unger v. Nunda Township Rural Fire Protection District* (1985), 135 Ill. App. 3d 758, 764, 482 N.E.2d 123.

For these reasons, it is apparent that as a matter of law, the present record indicates a factual question as to the parties' intent in executing the settlement agreement. Since summary judgment is proper only if there are no issues of material fact and the moving party is entitled to judgment as a matter of law (*Local 165, International Brotherhood of Electrical Workers v. Bradley* (1986), 149 Ill. App. 3d 193, 204, 499 N.E.2d 577; Ill. Rev. Stat. 1985, ch. 110, par. 2—1005), the granting of summary judgment in the present case was improper.

Plaintiff also argues that the trial court erred in granting summary judgment on the breach of warranty count as to defendant Irvin. Since this court is reversing and remanding this matter in its entirety because there are material issues of fact, any issues of fact as to Irvin's scope of authority should be addressed by the trial court.

In accordance with the reasons expressed in this opinion, we must reverse and remand this cause for a new trial on all three counts consistent with the views expressed herein.

Reversed and remanded.

LORENZ and PINCHAM, JJ., concur.